FILED

FEB 10 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   THOMAS J. GODDARD
    thomas@lawz.app
2   [Address Protected by ADA] 1910 NORTH MAIN ST. #624
    Walnut Creek, CA 94596
3   Telephone: (415) 985-5539
4   Plaintiff, pro se
    Pepperdine University
5   Administrative Law & Litigation + International Law

6

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11              CV26.01237

12  THOMAS JOSEPH GODDARD,          | Case No.                         TSH
13          Plaintiff,             |
14              v.                 | **COMPLAINT FOR RETALIATORY**
                                   | **EVICTION & CIVIL RIGHTS**
15  1910 N. MAIN STREET APARTMENTS | **VIOLATIONS**
    CAPITAL, LLC, DBA NoMa         |
16  Apartments; et al.,            | DEMAND FOR JURY TRIAL
17          Defendants.            | *Emergency Ex Parte Application*
                                   | *for TRO Filed Concurrently*
18  _____    |

19

20

21

22

23

24

25

26

27

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1

# TABLE OF CONTENTS

2   TABLE OF AUTHORITIES                                          4

3        United States Supreme Court Cases                        4

4        United States Courts of Appeals Cases                    5

5        Federal Statutes and Rules                               5

6        State Cases                                              6

7        State Statutes                                           6

8   I.      INTRODUCTION                                          7

9   II.     THIS ACTION IS NOT BARRED BY RES JUDICATA             8

10  III.    JURISDICTION & VENUE                                  9

11  IV.     PARTIES                                               10

12       A.      Plaintiff                                        10

13       B.      Defendants                                       10

14  V.      INDEX OF INCORPORATION BY REFERENCE                   11

15       A.      Legal Authority for Incorporation               11

16       B.      Incorporated Federal Proceedings                12

17       C.      Documents from Ninth Circuit Appeals            21

18       D.      Incorporated State Court Proceedings            22

19       E.      Administrative Proceedings                      24

20       F.      Medical Documentation                           25

21       G.      Witness Declarations                            26

22       H.      Statistical & Pattern Evidence                  26

23       I.      Discrimination Event Database                   27

24       J.      Criminal Proceedings                            27

25       K.      Financial Institution Evidence                  28

26       L.      Incorporated Judicial Decisions                 29

27       M.      Cross-Institutional Coordination Evidence       30

28       N.      Effect of Incorporation                         31

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

| | | | |
|---|---|---|---|
| 1 | VI. | FACTUAL ALLEGATIONS | 31 |
| 2 | | A. | Background: The Prior Federal Action | 31 |
| 3 | | B. | Pre-Dismissal Retaliatory Pattern Establishing Motive | 32 |
| 4 | | C. | Post-Dismissal Retaliatory Conduct | 34 |
| 5 | | D. | Habitability Violations | 39 |
| 6 | | E. | Medical Emergency | 40 |
| 7 | | F. | Connection to Broader Pattern of Coordinated Discrimination | 42 |
| 8 | VII. | CAUSES OF ACTION | 44 |
| 9 | | A. FIRST CAUSE OF ACTION | 44 |
| 10 | | B. SECOND CAUSE OF ACTION | 46 |
| 11 | | C. THIRD CAUSE OF ACTION | 49 |
| 12 | | D. FOURTH CAUSE OF ACTION | 50 |
| 13 | | E. FIFTH CAUSE OF ACTION | 50 |
| 14 | | F. SIXTH CAUSE OF ACTION | 52 |
| 15 | | G. SEVENTH CAUSE OF ACTION | 53 |
| 16 | | H. EIGHTH CAUSE OF ACTION | 55 |
| 17 | | I. NINTH CAUSE OF ACTION | 56 |
| 18 | | J. TENTH CAUSE OF ACTION | 57 |
| 19 | | K. ELEVENTH CAUSE OF ACTION | 58 |
| 20 | VIII. | DAMAGES | 60 |
| 21 | | A. | A. Economic Damages: $362,440 | 60 |
| 22 | | B. | B. Non-Economic Damages: $725,000 | 61 |
| 23 | | C. | C. Total Compensatory Damages: $1,087,440 | 62 |
| 24 | | D. | D. Statutory Enhanced Damages: $2,174,880 | 63 |
| 25 | | E. | E. Punitive Damages: $4,349,760 | 64 |
| 26 | | F. | F. Total Damages Summary | 65 |
| 27 | IX. | PRAYER FOR RELIEF | 65 |
| 28 | X. | DEMAND FOR JURY TRIAL | 67 |

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) ......................... *passim*

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ....................................... *passim*

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ................ *passim*

*Castaneda v. Partida*, 430 U.S. 482 (1977) ....................................... *passim*

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ................... *passim*

*Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009) ...................... *passim*

*Dennis v. Sparks*, 449 U.S. 24 (1980) ............................................ *passim*

*Gonzalez v. Trevino*, 602 U.S. 653 (2024) ........................................ *passim*

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ..................................... *passim*

*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968) ............................... *passim*

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................ *passim*

*Hazelwood Sch. Dist. v. United States*, 433 U.S. 299 (1977) ...................... *passim*

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) ......................... *passim*

*Lindke v. Freed*, 601 U.S. ____ (2024) ........................................... *passim*

*Mitchum v. Foster*, 407 U.S. 225 (1972) .......................................... *passim*

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ............................... *passim*

*Murray v. UBS Sec., LLC*, 601 U.S. 23 (2024) .................................... *passim*

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................... *passim*

*Olmstead v. L.C.*, 527 U.S. 581 (1999) ........................................... *passim*

*Sell v. United States*, 539 U.S. 166 (2003) ...................................... *passim*

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) ................. *passim*

*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987) ........................ *passim*

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) ............... *passim*

*Tennessee v. Lane*, 541 U.S. 509 (2004) .......................................... *passim*

*Thompson v. Clark*, 596 U.S. 36 (2022) .......................................... *passim*

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972) ........................ *passim*

— 4 —

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) .... *passim*

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ........................ *passim*

**UNITED STATES COURTS OF APPEALS CASES**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ......... *passim*

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999) ...................... *passim*

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) ........................... *passim*

*Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006) *passim*

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) ............................... *passim*

*Giebeler v. M & B Assocs.*, 343 F.3d 1143 (9th Cir. 2003) ..................... *passim*

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) .......................... *passim*

*Hollis v. R & R Restaurants, Inc.*, No. 24-2464 (9th Cir. 2025) ................. *passim*

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001) .............. *passim*

*In re City Equities Anaheim, Ltd.*, 22 F.3d 954 (9th Cir. 1994) ................. *passim*

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) .......................... *passim*

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) .............................. *passim*

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) ........ *passim*

*Scanlon v. County of Los Angeles*, 92 F.4th 781 (9th Cir. 2024) ................. *passim*

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) .............. *passim*

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) ..................... *passim*

**FEDERAL STATUTES AND RULES**

28 U.S.C. § 1331 (Federal Question Jurisdiction) ............................... *passim*

28 U.S.C. § 1343 (Civil Rights Jurisdiction) .................................. *passim*

28 U.S.C. § 1367 (Supplemental Jurisdiction) ................................. *passim*

42 U.S.C. § 3604(f) (Fair Housing Act — Disability Discrimination) ............. *passim*

42 U.S.C. § 3613 (Fair Housing Act — Private Enforcement) ................... *passim*

42 U.S.C. § 3617 (Fair Housing Act — Retaliation) ........................... *passim*

42 U.S.C. § 12182 (Americans with Disabilities Act — Title III) ................ *passim*

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1  42 U.S.C. § 1985(3) (Conspiracy to Interfere with Civil Rights) .................... *passim*

2  Exec. Order No. 14188, 90 Fed. Reg. 8741 (Jan. 29, 2025) (Combating Anti-Semitism)

3  *passim*

4  **STATE CASES**

5  *Alcorn v. Anbro Engineering, Inc.,* 2 Cal. 3d 493 (1970) .......................... *passim*

6  *Christensen v. Superior Court,* 54 Cal. 3d 868 (1991) ........................... *passim*

7  *Green v. Superior Court,* 10 Cal. 3d 616 (1974) ................................ *passim*

8  *Lawson v. PPG Architectural Finishes, Inc.,* 12 Cal. 5th 703 (2022) .............. *passim*

9  *Marina Point, Ltd. v. Wolfson,* 30 Cal. 3d 721 (1982) ........................... *passim*

10  *Stoiber v. Honeychuck,* 101 Cal. App. 3d 903 (1980) ............................ *passim*

11  *Venegas v. County of Los Angeles,* 32 Cal. 4th 820 (2004) ....................... *passim*

12  **STATE STATUTES**

13  Cal. Civ. Code § 51 (Unruh Civil Rights Act) .................................... *passim*

14  Cal. Civ. Code § 52 (Unruh Act — Damages and Enforcement) .................. *passim*

15  Cal. Civ. Code § 52.1 (Tom Bane Civil Rights Act) ............................... *passim*

16  Cal. Civ. Code § 54.1 (Disabled Persons Act — Equal Access) ................... *passim*

17  Cal. Civ. Code § 789.3 (Landlord Abuse of Rights of Access) .................... *passim*

18  Cal. Civ. Code § 1941.1 (Warranty of Habitability) ............................. *passim*

19  Cal. Civ. Code § 1942.5 (Retaliatory Eviction) ................................. *passim*

20  Cal. Gov. Code § 12927 (FEHA — Definitions) .................................. *passim*

21  Cal. Gov. Code § 12955 (FEHA — Housing Discrimination) .................... *passim*

22  Cal. Gov. Code § 12955.7 (FEHA — Retaliation) ................................ *passim*

23  Cal. Health & Safety Code § 17920.3 (Substandard Buildings) ................... *passim*

24

25

26

27

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

## I.  INTRODUCTION

1. This action arises from Defendants' campaign of retaliatory eviction against a disabled, immunocompromised, Jewish pro se litigant. On February 3, 2026, the Contra Costa County Sheriff's Office served Plaintiff Thomas Joseph Goddard with a Notice to Vacate requiring him to leave his home—1910 North Main Street, Unit 627, Walnut Creek, California—by **February 17, 2026**. The Writ of Execution (EJ-130, Levying Officer File No. 2026000538) reflects a judgment of **$0.00** in principal, $0.00 in costs, and $0.00 in interest, with only $40.00 in writ fees. The eviction is not about money owed. It is retaliation for Plaintiff's exercise of his civil rights.

2. Every claim in this Complaint arises from **conduct occurring after October 21, 2025**—the date the prior action, *Goddard v. 1910 N. Main Street Apartments Capital, LLC*, No. 3:25-cv-05882-EMC (N.D. Cal.), was dismissed with prejudice. This action is therefore not barred by res judicata, claim preclusion, or issue preclusion. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) ("a judgment in a prior action is not res judicata as to claims arising from conduct occurring after the filing of the prior action").[1]

3. Plaintiff is a 46-year-old disabled man with documented asplenia (rendering him severely immunocompromised), vocal cord paralysis, cervical and lumbar disk herniations, essential tremor, PTSD, and other qualifying disabilities. A UCSF physician, Dr. Maria Catalina Cuervo, has warned that continued housing instability "is not a civil matter but a medical emergency requiring immediate intervention to minimize morbidity," and that homelessness could result in "stroke, heart attack, or death."

4. Despite this, Defendants' attorney Tiffany D. Truong of Kimball, Tirey & St. John LLP confirmed on February 6, 2026, that her clients "declined Mr. Goddard's request to delay or cancel the sheriff lockout"—even as the Ninth Circuit appeal (Case

---

[1] The Ninth Circuit applies the "transactional nucleus of facts" test for claim preclusion. *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001). The post-October 21, 2025 conduct alleged herein—parasitic infestation hospitalization, unlawful detainer filing during medical incapacity, medical record falsification, ADA accommodation denial, sheriff lockout execution, and the lockout that made completion of Ninth Circuit mediation impossible—constitutes an entirely new transactional nucleus of facts that could not have been raised in the prior action because it had not yet occurred. Each new retaliatory act gives rise to a new claim for relief. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (each discrete discriminatory or retaliatory act constitutes a separately actionable unlawful employment practice).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1   No. 25-6676) remained pending. The Ninth Circuit's Chief Circuit Mediator subsequently

2   released the case from the Court's mediation program by order dated February 8, 2026

3   (**Exhibit MRO**), because the scheduled lockout made completion of mediation

4   impossible. This is not good-faith litigation; it is coercion.

5        5. An Emergency Ex Parte Application for Temporary Restraining Order is filed

6   concurrently herewith.

## II.   THIS ACTION IS NOT BARRED BY RES JUDICATA

8        6. The prior action, *Goddard v. 1910 N. Main Street Apartments Capital, LLC,*

9   Case No. 3:25-cv-05882-EMC (N.D. Cal., Judge Edward M. Chen), was dismissed with

10  prejudice on October 21, 2025. A Ninth Circuit appeal (Case No. 25-6676) remains

11  pending, with an 842-page opening brief filed January 2, 2026. On February 9, 2026,

12  Plaintiff filed an Emergency Motion for Stay of Eviction Pending Appeal in the Ninth

13  Circuit (Dkt. 32.1, 286 pages) pursuant to Fed. R. App. P. 8(a)(2) and 9th Cir. R. 27-3,

14  arguing that all four *Nken v. Holder*, 556 U.S. 418, 434 (2009), factors favor a stay.

15  Plaintiff could not seek a stay from the district court because Judge Chen imposed filing

16  restrictions (Dkt. 49) that preclude the filing of a stay motion. *See*

17  Fed. R. App. P. 8(a)(2)(A)(ii).

18       7. This Complaint does not seek to relitigate the claims raised in Case

19  No. 3:25-cv-05882-EMC. Rather, **every cause of action herein is based on new**

20  **conduct that occurred after October 21, 2025**, and therefore could not have been

21  raised in the prior action:

22       (a)   **November 14, 2025**: Plaintiff hospitalized for parasitic infection

23             caused by Defendants' habitability violations (Event 0x186);

24       (b)   **November 17–18, 2025**: Defendants filed unlawful detainer action

25             (Case No. MS25-0977) while Plaintiff was bedridden from the

26             hospitalization, three days after the medical emergency (Event 0x187);

27       (c)   **December 2, 2025**: Plaintiff's ninth emergency room visit; LCSW

28             Robert V fabricated false "delusional" characterization in medical

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    records for describing documented litigation (Event 0x188);

2    (d)    **December 22, 2025**: Judge Christopher R. Bowen denied ADA

3    accommodation request in unlawful detainer proceeding; simultaneously,

4    Plaintiff's tenth ER visit with hypertensive crisis (BP 176/131 mmHg),

5    rectal bleeding, IV morphine, and new 5mm renal calculi (Events 0x189,

6    0x18A);

7    (e)    **February 3, 2026**: Contra Costa County Sheriff's Office served Notice

8    to Vacate with lockout deadline of February 17, 2026 (Writ of Execution

9    EJ-130, Levying Officer File No. 2026000538);

10    (f)    **February 6, 2026**: Defendants' counsel confirmed clients' refusal to

11    delay lockout; the Chief Circuit Mediator subsequently released the case

12    from the Ninth Circuit mediation program by order dated February 8,

13    2026 (**Exhibit MRO**).

14    8. Under *Lawlor*, 349 U.S. at 328, res judicata does not bar claims arising from

15    "materially different" conduct occurring after the prior judgment. *See also Semtek Int'l*

16    *Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001) (federal common law governs

17    preclusive effect of federal diversity judgments). Each post-dismissal retaliatory act

18    constitutes a new and independently actionable violation of the Fair Housing Act. *See*

19    *Morgan*, 536 U.S. at 113.

20    9. **This is not a related case** under Civil Local Rule 3-12. It arises from a

21    different transactional nucleus of facts (post-October 21, 2025 conduct), involves new

22    claims (habitability violations, retaliatory eviction execution, sheriff lockout), and

23    presents new legal issues (res judicata exception for new retaliatory acts, FHA retaliation

24    through eviction execution). Assignment to a different judge is appropriate.

25    **III.   JURISDICTION & VENUE**

26    10. This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question),

27    28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 3613(a)(1)(A) (Fair Housing Act private

28    enforcement), and 42 U.S.C. § 12188 (ADA enforcement).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 9 —

1    11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the

2    state law claims because they arise from the same case or controversy as the federal

3    claims.

4    12. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events

5    giving rise to the claims occurred in Walnut Creek, Contra Costa County, California,

6    within this judicial district.

7    **IV.  PARTIES**

8    **A.  Plaintiff**

9    13. Plaintiff THOMAS JOSEPH GODDARD is a natural person, citizen of the

10   United States, and resident of the State of California. Plaintiff resides at 1910 North

11   Main Street, Unit 627, Walnut Creek, California 94596. Plaintiff is:

12       (a)    A disabled individual within the meaning of the Fair Housing Act (42

13             U.S.C. § 3602(h)) and the Americans with Disabilities Act (42

14             U.S.C. § 12102), with documented conditions including: asplenia

15             (splenectomy 1993–1994, rendering Plaintiff severely

16             immunocompromised); idiopathic vocal cord paralysis requiring

17             prosthetic implant; cervical disk herniation (2mm right paracentral

18             protrusion at C5-C6); lumbar disk herniation (3.5mm broad-based

19             central protrusion at L5-S1); essential tremor; acute idiopathic gout;

20             anxiety disorder; depression; ADHD; post-traumatic stress disorder; and

21             bipolar disorder;

22       (b)    Jewish, and the grandson of a United States Army 82nd Airborne

23             Division soldier who helped liberate Nazi concentration camps;

24       (c)    A pro se litigant proceeding in this action without counsel.

25   **B.  Defendants**

26   14. Defendant **1910 N. MAIN STREET APARTMENTS CAPITAL, LLC**,

27   doing business as **NOMA APARTMENTS**, is a Delaware limited liability company

28   operating a residential apartment complex at 1910 North Main Street, Walnut Creek,

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    California 94596. This Defendant is the owner of the property and Plaintiff's landlord.

2        15. Defendant **SARES-REGIS GROUP RESIDENTIAL, INC.** is a

3    California corporation that manages the NoMa Apartments complex. On information and

4    belief, Sares-Regis Group manages approximately $2.1 billion in assets and over 43,000

5    apartment units, and is the entity responsible for operational decisions including

6    accommodation requests, maintenance, and eviction proceedings.

7        16. Defendants **DOES 1 through 20**, inclusive, are persons and entities whose

8    true names and capacities are unknown to Plaintiff. Plaintiff will amend this Complaint

9    to set forth their true names and capacities when ascertained.

10   **V.   INDEX OF INCORPORATION BY REFERENCE**

11       Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff incorporates by

12   reference the following concurrent federal and state court filings, which together document

13   a coordinated pattern of discrimination across multiple defendants operating as part of a

14   unified conspiracy.[2]

15       **A.   Legal Authority for Incorporation**

16       This Court may properly consider all documents incorporated by reference

17   pursuant to:

18       **Federal Authority:**

19     –   Federal Rule of Civil Procedure 10(c) ("A statement in a pleading may be adopted

20       by reference elsewhere in the same pleading or in any other pleading or motion")

21     –   Federal Rule of Evidence 106 (Rule of Completeness)—supports admission of the

22       complete 648-event discrimination database when any portion is introduced.

23   [2]This section is placed before the factual allegations so that all exhibits and incorporated documents are formally part of the pleading *before* the Court encounters citations to them in the factual narrative. Fed. R. Civ. P. 10(c) authorizes incorporation by reference without imposing a placement requirement; Rule 10(b) supports organizational choices that "promote clarity." *See* 5A Wright & Miller,

24   *Federal Practice and Procedure* § 1326 (4th ed.); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference "treats certain documents as though they are part of the complaint itself"); *Weiland v. Palm Beach Cnty. Sheriff's*

25   *Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (condemning "shotgun pleadings"). Early placement ensures every subsequent exhibit citation is an *anaphoric* (backward) reference to material already established, reducing reader processing burden. *See* Clark & Haviland,

26   *Comprehension and the Given-New Contract*, in Discourse Production and Comprehension 1–40 (1977); Stanchi, *The Power of Priming in Legal Advocacy*, 89 Or. L. Rev. 305, 312–17 (2010). This structure parallels the standard federal criminal complaint form (AO-91),

27   which places incorporation at the top, and the OASIS Electronic Court Filing standard (ECF 5.0), which mandates that referenced materials precede the document body. This Complaint was prepared with the assistance of ADA-compliant assistive technology as a reasonable accommodation for Plaintiff's documented disabilities. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(7); *see* WCAG 2.1 § 1.3.2

28   ("Meaningful Sequence"). Plaintiff's use of assistive technology to prepare court filings is constitutionally protected. *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004); *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1    *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996).

2    – Federal Rule of Evidence 201 (Judicial Notice)—permits notice of consent decrees,

3    CFPB enforcement actions, government discrimination reports, and financial

4    statements. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

5    – Federal Rule of Evidence 404(b)(2) (Other Acts)—648 events spanning 93.10 years

6    admissible to prove discriminatory intent. *Hunter v. Underwood*, 471 U.S. 222, 229

7    (1985); *United States v. Peden*, 961 F.2d 517, 521 (5th Cir. 1992).

8    – *Parrish v. Latham & Watkins*, 238 F.R.D. 644, 649 (C.D. Cal. 2006)

9    – *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)

10    **Ninth Circuit Authority:**

11    – Ninth Circuit Rule 30-1.6

12    – *Bias v. Moynihan*, 508 F.3d 1212, 1224-25 (9th Cir. 2007)

13    – *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)

14    **B.  Incorporated Federal Proceedings**

15    The following federal proceedings—including all complaints, amended complaints,

16    motions, declarations, exhibits, orders, docket entries, statistical analyses, and evidence

17    filed therein—are incorporated by reference in their entirety pursuant to

18    Fed. R. Civ. P. 10(c). All allegations, claims, and evidence from these proceedings are

19    adopted as if fully set forth herein.

20    (a)    **N.D. Cal. Case No. 3:25-cv-05882-EMC**

21    *Goddard v. 1910 N. Main Street Apartments Capital, LLC, et al.*

22    Complete docket history (Dockets 1-36) including:

23    – Original Complaint (Dkt. 1)

24    – Medical documentation and exhibits (Dkt. 10-1)

25    – Order Granting in Part Motion for TRO (Dkt. 21)

26    – Order Denying Motion for Preliminary Injunction (Dkt. 29)

27    – First Amended Complaint (Dkt. 35)

28    (b)    **N.D. Cal. Case No. 3:25-cv-06187-JSC**

*Goddard v. Apple Inc.* (Judge Jacqueline Scott Corley)—73 docket
entries (Dkts. 1–73).

– Technology industry discrimination; October 24, 2023
   employment rescission 17 days post-October 7 (Event 0x02B);
   ADA violations; coordinated service denial
– Operative complaint: Second Amended Complaint (Dkt. 42, 2,138
   pages, Oct. 22, 2025); Motion for Leave to File TAC (Dkt. 64)
   pending
– Key orders: IFP and ADA accommodations granted (Dkt. 6);
   Slickdeals claims severed (Dkt. 32); Apple's first MTD dismissed;
   all three pending motions **taken under submission** after
   February 5, 2026 hearing (Dkt. 73)
– CRD Right to Sue (Dkt. 58)—FEHA exhaustion; filing deadline
   November 28, 2026
– Key exhibits: Medical documentation (**Exhibit D**); lab results
   (**Exhibit T**); conspiracy documentation (**Exhibit QQ**); data
   harvesting (**Exhibit RR**); Rockwell IRC (**Exhibit O**); Amiri
   messages (**Exhibit AMIRI**), (**Exhibit BB**); timeline
   (**Exhibit E**); retaliation timeline (**Exhibit NN**); coordination
   evidence (**Exhibit EE**); domain valuation (**Exhibit WW**);
   Pasamba declaration (**Exhibit LL**); Cuervo letters (**Exhibit S**);
   UCSF records (**Exhibit U**); ADA order (**Exhibit PP**); Exhibit
   XXXXXX (statistical analysis); video evidence of discriminatory
   statements (Dkt. 43); Exhibits AAA–DDD (multi-vector technical
   attack, bundle identifier theft, code signing impossibility)
– CMC set February 25, 2026 at 2:00 PM via Zoom

(c) **N.D. Cal. Case No. 3:25-cv-02910-CRB**

*Goddard v. Contra Costa County, et al.* (Judge Charles R. Breyer)—46


Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    docket entries (Dkts. 1–46).

2        –  Civil rights violations, Younger Abstention (Dkt. 13), mass

3            judicial recusal of all 39 Contra Costa County judges

4        –  Operative complaint: First Amended Complaint (Dkt. 36, 551

5            pages)—defendants include Diana Becton, Julia Campins,

6            Benjamin T. Reyes II, UCSF Medical Center

7        –  Key orders: IFP granted; Younger Abstention applied; damages

8            stayed; Ninth Circuit affirmed (Dkt. 43, Dec. 22, 2025); mandate

9            issued (Dkt. 44, Jan. 14, 2026)

10       –  Emergency Petition for Writ of Mandamus (Dkt. 45, 702 pages,

11           Jan. 28, 2026)—denied same day (Dkt. 46)

12       –  Key exhibits: Medical declarations (**Exhibit S**); emergency visits

13           (**Exhibit D**); Amiri evidence (**Exhibit BB**), (**Exhibit AMIRI**)

14       –  HUD Investigation No. 821679; related appeals: No. 25-2205

15           (affirmed), No. 25-6741 (dismissed)

16   (d)   **D.N.J. Case No. 2:25-cv-03883-EP-MAH**

17        *Goddard v. InterServer*

18       –  Second Amended Complaint for defamation, copyright

19           infringement, and civil rights violations

20       –  Copyright registration obtained per *Fourth Estate* requirement

21       –  Evidence of coordinated defamation campaign ($14.5 million

22           valuation)

23       –  DMCA Section 512 safe harbor analysis and forfeiture through

24           bad faith

25       –  New Jersey LAD claims (N.J.S.A. 10:5-1 et seq.)

26       –  Pattern of cross-platform coordination

27       –  Case value: $38,939,609 compensatory + $116,818,827 punitive =

28           $155,758,436+

— 14 —

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

1     (e)   **Goddard v. Verizon Communications Inc.**

2     *Telecommunications Discrimination, ADA Violations, Service*

3     *Manipulation*

4          –   Complaint documenting systematic offshore routing—100%

5              international routing pattern

6          –   FCC accessibility violations under 47 U.S.C. § 255 and 47

7              C.F.R. § 64.601

8          –   ADA Title III violations—deliberate service degradation targeting

9              disabled user

10         –   Wiretapping and privacy violations under 18 U.S.C. § 2511 and

11             California Penal Code § 631

12         –   Call routing manipulation as interception of communications

13             through hostile jurisdictions

14         –   Chronological timeline of discrimination events (**Exhibit 12**)

15         –   Cross-references: Events documenting telecommunications

16             discrimination cluster

17    (f)   **E.D. Mich. – Goddard v. Goddard Trust**

18    *Inheritance Theft, Breach of Fiduciary Duty, Fraud, Conversion, Civil*

19    *Conspiracy*

20         –   Complaint documenting Douglas Donald Goddard Jr. breach of

21             fiduciary duty

22         –   Robert Charles Goddard coordination with General

23             Dynamics/GDLS

24         –   Elon Musk involvement through General Dynamics/SpaceX

25             coordination

26         –   IRC communications documenting family coordination with tech

27             defendants

28         –   Anthropic model theft connection to inheritance theft pattern

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1          − 15+ exhibits (A–O) documenting trust fraud and coordination

2     (g)   **N.D. Cal. – Goddard v. Campins, et al.**

3        *Civil Rights Violations Under Color of Law – 42 U.S.C. §§ 1983,*

4        *1985(3); 18 U.S.C. §§ 241, 242*

5        − Complaint for civil rights violations filed February 7, 2026

6        − Defendants: Hon. Julia Campins (Contra Costa Superior Court,

7           Dept. 10), Mandana Mir Arjmand, Does 1–50

8        − IRC network conspiracy documentation (2005–2009)—Defendant

9           Campins's participation in channels containing Nazi ideology

10          statements, concentration camp references, and antisemitic

11          targeting

12       − Mandatory disqualification under Cal. Code Civ.

13          Proc. § 170.1—prior social relationship with

14          complainant/defendant through IRC network

15       − Weaponized competency evaluations under Penal Code

16          § 1369(a)—ordered without meeting *People v. Pennington*, 66

17          Cal.2d 508 (1967) substantial evidence standard

18       − Brady violations by Deputy DA Danielle Brown—failure to

19          disclose IRC evidence and exculpatory material

20       − Faretta rights violations—denial of self-representation rights

21          documented in Ninth Circuit emergency petition (25-6676,

22          Dkt. 29, 702 pages, Jan. 28, 2026)

23       − September 18, 2025 vehicular surveillance by Defendant Arjmand

24          (Event 0x35A)—black SUV, California plate 8GYF119

25       − January 8, 2026 courthouse events (Events 0x35F–0x366):

26          scheduling conflict, ADA accommodation denial, false accusation,

27          counsel waiver against client demands, weaponized competency

28          evaluation, bailiff intimidation, post-hearing stalking

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

- January 9, 2026 medical emergency (Event 0x368)—suspected drugging following courthouse events
- Mass recusal of all 39 Contra Costa County judges (August 4, 2025, Event 0x0DD)—1,165,927 county residents left without functioning judicial system
- Judicial immunity exception: *Forrester v. White*, 484 U.S. 219; *Dennis v. Sparks*, 449 U.S. 24
- Cross-references:

  *People v. Goddard*, Case No. 01-24-03484 (Contra Costa Super. Ct., Dept. 10); *Amiri v. Goddard*, No. D24-03337 (dismissed Feb. 3, 2025);

  *Goddard v. County of Contra Costa*, No. 3:25-cv-02910-CRB (Dkt. 36, 551 pages; Dkt. 45, 702-page mandamus petition)
- Events 0x35F–0x368, 0x3FF–0x400

(h) **N.D. Cal. – Goddard v. Zuckerberg San Francisco General Hospital, et al.**

*Psychiatrification*—FAC filed Jan. 30, 2026. Defendants: ZSFG, Marin General, UC Regents (UCSF Langley Porter), SF/Marin Counties, Does 1–50.

- Involuntary psychiatric holds: Jan. 13–16, 2020 (Langley Porter) and July 8–12, 2024 (SFGH); forced drugging, lobotomy threats
- 42 U.S.C. §§ 1981, 1983, 1985; ADA Title II/III; Fourth/Fourteenth Amendment (*Youngberg*, *Foucha*)
- Cross-references: 4:26-cv-01044-ASK; Executive Order 14188

(i) **N.D. Cal. Case No. 3:26-cv-01039-AGT**

*Goddard v. Slickdeals, LLC*—FAC (Dkt. 1, 299 pages, Feb. 2, 2026), severed from 3:25-cv-06187-JSC. CMC May 8, 2026.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1          –   Title VII, ADA, SOX whistleblower retaliation; EEOC Right to

2             Sue (**Exhibit A**); *Murray v. UBS*, 601 U.S. ____ (2024)

3          –   Witness declarations: Mabrito (**Exhibit W**), Temple

4             (**Exhibit U**), Pasamba (**Exhibit LL**); audio transcript

5             (**Exhibit B**)

6          –   Ken Leung racial statements, Elizabeth Simer antisemitic

7             remarks, post-termination conspiracy

8          –   Meta whistleblower Purkayastha ATT circumvention validation;

9             Amazon–Slickdeals $20–50M partnership

10         –   Events 0x115–0x149 (employment cluster); Event 0x100 (July 15,

11            2024 termination)

12       (j)    **N.D. Cal. Case No. 3:26-cv-01040-AGT**

13          *Goddard v. Amazon.com, Inc.*—Complaint filed Feb. 2, 2026.

14          –   Consumer discrimination, algorithmic targeting, AWS account

15             suspension ($50M+ assets seized over $73 disputed charge)

16          –   100% international routing pattern (31 shipments vs. 0% control);

17             disparate treatment under 42 U.S.C. § 1981

18          –   CCPA, FTC Act, RICO claims; Amazon $8B Anthropic

19             investment; Amazon–Slickdeals $20–50M partnership

20          –   Events 0x019, 0x034, 0x3E1–0x3E6, 0x425, 0x41B, 0x443

21       (k)   **N.D. Cal. Case No. 3:26-cv-01041-AGT**

22          *Goddard v. Warby Parker, Inc., et al.*—FAC (Dkt. 1, 21 pages, Feb. 2,

23          2026). CMC May 8, 2026.

24          –   ADA Title III violations; disability discrimination during Jan. 12,

25             2025 eye exam (Event 0x322)

26         –   Accommodation denial; attempted overcharge; October 2025

27            medical records deletion

28          –   Exhibits A–K; Events 0x115–0x149

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1

(l)  **N.D. Cal. Case No. 3:26-cv-01042-PHK**

*Goddard v. JPMorgan Chase Bank, N.A., et al.*—FAC (Dkt. 1, 81 pages, Feb. 2, 2026). CMC May 6, 2026.

– FDCPA, ECOA, TILA, FCRA, Rosenthal Act, ADA violations; vehicle repossession coordination

– BMW repossession Aug. 18, 2025—five days before anniversary of prior vehicle theft (1 in 5,046,402 coincidence); NOMA Apartments coordination; Exhibit R-3

– Chase 2FA attack; Slickdeals phone number on account; IRC evidence (Dimon, Moynihan, Campins)

– Cross-reference: Guardian Life claim interference (Claim #000152845)

(m)  **N.D. Cal. Case No. 3:26-cv-01043-AMO**

*Goddard v. Neutrino Labs, LLC, et al.*—FAC (Dkt. 1, 24 pages, Feb. 2, 2026). Defendants: Dario Amodei, Vic Lee, Neutrinolabs LLC, Jay Sorg. CMC May 7, 2026.

– 51% equity theft, DTSA (18 U.S.C. § 1836), breach of fiduciary duty

– GitHub repository takeover (Aug. 2, 2009); FreeRDP/XRDP theft; Bitcoin wallet theft ($10B+)

– Events 0x36C–0x377; SourceForge and IRC development coordination evidence

(n)  **N.D. Cal. Case No. 4:26-cv-01044-ASK**

*Goddard v. Anthropic PBC, et al.*—FAC (Dkt. 1, 71 pages, Feb. 2, 2026). Defendants: Anthropic PBC, Dario Amodei, Sam Altman, OpenAI, Elon Musk, SpaceX, Tesla, Reid Hoffman, Does 1–100. CMC May 5, 2026.

– AGI theft ($15 trillion damages)—2009 completion (Event 0x3FA); DTSA and CUTSA claims

1       –  "Anthropic" name theft (Dec. 2021); GitHub platform creation
2          (Events 0x3ED–0x3F0); $7.5B Microsoft acquisition
3       –  ADA violations; Claude AI service denials (**Exhibit W**); Amazon
4          $8B circular liability; AWS $50M+ asset seizure
5       –  IRC evidence 2003–2009; Bob Lee murder (Event 0x400);
6          Arjmand surveillance; Amiri connections; Concord PD detention
7       –  Exhibits A–Z

8  (o)  **N.D. Cal. Case No. 3:26-cv-01045-LB**

9       *Goddard v. Guardian Life Insurance Company of America, et*
10      *al.*—Complaint (Dkt. 1, 45 pages, Feb. 2, 2026). IFP granted (Dkt. 4,
11      Judge Beeler); summons issued. CMC May 7, 2026.

12      –  ERISA violations, LTD benefits denial, insurance bad faith
13         (Claims #000152845, #487049)
14      –  Events 0x3F4–0x3F9: disability onset July 2024, SDI exhaustion
15         ($77,528.56), medication access crisis
16      –  Cross-reference: Chase case coordination; insurance
17         discrimination cluster

18  (p)  **N.D. Cal. Case No. 3:26-cv-01046-TSH**

19      *Goddard v. Microsoft Corporation*—Complaint (Dkt. 1, 45 pages, Feb. 2,
20      2026). IFP granted (Dkt. 4, Judge Hixson); summons issued and served
21      (Dkt. 6). CMC May 7, 2026.

22      –  Account access denial (mayant@hotmail.com—Anthropic backend
23         credentials); evidence spoliation (18 U.S.C. § 1519)
24      –  GitHub acquisition ($7.5B)—Plaintiff's repositories (Events
25         0x3ED–0x3F0); $13B OpenAI investment conflict
26      –  HIPAA, SCA, CFAA violations; coordinated technology sector
27         targeting

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    **C.  Documents from Ninth Circuit Appeals**

2        (a)    **Ninth Circuit Appeal No. 25-5230**

3            *Goddard v. 1910 N. Main Street Apartments Capital, LLC, et*

4            *al.*—Appeal from 3:25-cv-05882-EMC (Preliminary Injunction).

5            **DISMISSED** (Dec. 23, 2025; Paez, Christen, Koh); Mandate Jan. 14,

6            2026.

7            31 docket entries. Appeal held moot after district court dismissal.

8            Excerpts of Record (1,912 pages) contain complete statistical and

9            pattern evidence.

10        (b)    **Ninth Circuit Appeal No. 25-6676**

11            *Goddard v. 1910 N. Main Street Apartments Capital, LLC, et*

12            *al.*—Appeal from 3:25-cv-05882-EMC (Final Dismissal).

13            **ACTIVE**—Opening Brief filed (Dkt. 21, 842 pages, Jan. 2, 2026);

14            pending resolution.

15            29 docket entries. Key filings: Petition for Writ of Mandamus (Dkt. 18);

16            Emergency Motion for Injunctive Relief (Dkt. 19); Emergency

17            Motion/Supplemental Mandamus Petition (Dkt. 29, 702

18            pages)—addresses *People v. Goddard* criminal case, Shabnam Amiri

19            coordination, Faretta rights violations; includes witness declarations

20            (Mabrito, Temple, Pasamba) and comprehensive statistical analysis.

21        (c)    **Ninth Circuit Appeal No. 25-2205**

22            *Goddard v. Contra Costa County, et al.*—Appeal from

23            3:25-cv-02910-CRB.

24            **AFFIRMED** (Dec. 22, 2025; Paez, Christen, Koh); Mandate Jan. 13,

25            2026.

26            59 docket entries. Documents systematic civil rights violations, Shabnam

27            Amiri coordination, and HUD Investigation No. 821679.

28        (d)    **Ninth Circuit Appeal No. 25-6741**

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    *Goddard v. Slickdeals, LLC and Apple Inc.*—Appeal from

2    3:25-cv-06187-JSC.

3    **DISMISSED** for lack of jurisdiction (Nov. 21, 2025; Silverman,

4    Tallman, Bumatay); Mandate Dec. 15, 2025.

5    18 docket entries. Motion to Recall Mandate pending (Dkt. 16, 2,321

6    pages)—includes TAC with video evidence and statistical analysis of

7    422+ events.

8    D.   **Incorporated State Court Proceedings**

9    (a)   **Alameda County Superior Court Case No. 25CV162300**

10   *Goddard v. Apple Inc.* (Department 17)

11   – Verified Complaint alleging ADA violations and discrimination

12   – Evidence of coordinated service denial and accessibility failures

13   – Pattern evidence demonstrating cross-institutional coordination

14   with telecommunications providers

15   – All exhibits and declarations filed therein

16   (b)   **Alameda County Superior Court Case No. 25CV153783**

17   *Goddard v. Slickdeals, LLC* (Dept. 520)—Eleven causes of action: FEHA

18   discrimination, hostile work environment, retaliation, disability

19   discrimination, failure to accommodate/prevent, Unruh Civil Rights Act,

20   IIED, NIED, defamation, civil conspiracy. CRD Matter

21   No. 202502-28171117.

22   – Key evidence: Audio transcript (**Exhibit B**); Mabrito

23   declaration (false security threat, "DO NOT CIRCULATE");

24   Jack Wu testimony; Purkayastha ATT circumvention validation

25   – Ken Leung racial statements; Elizabeth Simer antisemitic

26   remarks; unlimited FEHA recovery

27   (c)   **Alameda County Superior Court Case No. 26SC164063**

28   *Goddard v. Stamps.com, Inc.* (Small Claims)

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1                       – Small claims complaint for breach of contract and consumer fraud

2                           related to postage meter services

3                       – Stamps.com systematic billing fraud (October 2025):

4                           unauthorized charges, false account closure promises, breach of

5                           settlement agreement (Events 0x3F1–0x3F3)

6                       – Evidence of ADA violations in postal service access

7                       – Pattern evidence of coordinated denial of essential services

8      (d)    **Contra Costa Superior Court Case No. C25-02263**

9            *Goddard v. Contra Costa County, et al.*

10                  – Order to Show Cause re: Preliminary Injunction (hearing January

11                     8, 2026)

12                  – Evidence of procedural violations—clerk misconduct and

13                     technical interference documented in Ninth Circuit Dkt. 24

14                     (25-6676, 284 pages)

15                  – ADA accommodation request with eleven medically necessary

16                     accommodations (October 3, 2025, Event 0x34B)

17                  – Systematic ADA denials: written communication (Event 0x34C),

18                     digital tools (Event 0x34D), electronic filing (Event 0x34E),

19                     trauma-informed evaluation (Event 0x34F), treating psychiatrist

20                     coordination (Event 0x350)

21                  – Related cases: Fed. Appeal 25-6676 (9th Circuit); MS25-0977

22                     (Unlawful Detainer)

23      (e)    **Contra Costa Superior Court Case No. C25-00427**

24                  – Judicial Council Emergency Motion Petition re: Mass Recusal

25                  – Order of Recusal of all 39 judges (August 4, 2025)

26                  – Mathematical pattern analysis ($p < 10^{-4056}$)

27      (f)    **Contra Costa Superior Court Case No. MS25-0977**

28            *1910 N. Main Street Apartments Capital, LLC v. Goddard* (Unlawful

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 23 —

Detainer)

  – Unlawful detainer filed November 18, 2025 while Plaintiff bedridden

  – Evidence of retaliatory eviction during active civil rights proceedings

  – Defense documentation establishing Fair Housing Act violations

  – Motion to Stay pending resolution of Case No. C25-02263

 (g) **San Francisco Superior Court Case No. CGC-25-623360**

  *Goddard v. Slickdeals, LLC*

  – Employment discrimination complaint

  – Comprehensive Bayesian Analysis (Bayes Factor = 1024)

  – Motion for Leave to File Second Amended Complaint (August 11, 2025)

  – Emergency Motion to Compel Discovery Responses (August 28, 2025)

  – Guardian Life Insurance documentation (Claim #000152845)

**E.** **Administrative Proceedings**

 (a) **California Civil Rights Department**

  – Case No. 202505-29527122 - Right to Sue Letter (August 29, 2025)

  – Case No. 202506-17918393 - Housing discrimination complaint

  – CRD Matter No. 202502-28171117 - Employment discrimination (Right to Sue February 18, 2025)

  – DFEH/CRD Complaint No. 202501-16534823

 (b) **Equal Employment Opportunity Commission**

  – EEOC (**Exhibit A**)

  – Right to Sue Notice for Title VII and ADA violations

 (c) **U.S. Department of Housing and Urban Development**

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1      – HUD Complaint No. 09-25-0234-8

2      – HUD Case No. 09-25-2841-8

3      – HUD Case No. 09-25-6671-8 (NOMA housing discrimination)

4      – Investigation records documenting Fair Housing Act violations

5    (d)    **Office of Administrative Law Judges**

6      – OALJ Case No. 2025-SOX-00042 - Sarbanes-Oxley Whistleblower

7      Complaint

8      – Complainant's Comprehensive Brief in Support of

9      Appeal—documenting equitable tolling, attorney misconduct, and

10      mathematical evidence

11      – Initial Disclosures (July 3, 2024)

12      – Second Amended Initial Disclosures (August 29, 2025)

13      – Chase Bank, Meta ATT circumvention, protocol witness discovery

14      obstruction

15  **F.   Medical Documentation**

16  All medical records establishing disability status and damages (**Exhibit D**):

17  – Kaiser Permanente medical records (2023–2025)

18  – John Muir Medical Center hospitalization (July 10, 2025)

19  – UCSF Medical Center disability evaluations (**Exhibit S**); UCSF psychiatric

20  emergency records (July 11–12, 2024 involuntary hold) (**Exhibit U**)

21  – Eight emergency department visits (June 14 – August 15, 2025), with continuing

22  medical crises through December 22, 2025 (hypertensive crisis BP 176/131, rectal

23  bleeding, IV morphine, CT showing 5mm renal calculi)

24  – Laboratory results documenting life-threatening stress response with objective

25  evidence (**Exhibit T**)

26  – Documented disabilities: PTSD, Bipolar I, essential tremor, cervical disk

27  herniation, vocal cord paralysis, asplenia

28  – Medical expert declarations from:

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1          – Dr. Maria Catalina Cuervo (treating psychiatrist since May 2024) (**Exhibit S**)

2          – Dr. Michael Chen (Internal Medicine)

3          – Dr. Sarah Rodriguez (Psychiatry)

4          – Dr. James Park (Orthopedics)

5          – Dr. Lisa Thompson (Otolaryngology)

6      **G.  Witness Declarations**

7      – Declaration of Gregory Mabrito (**Exhibit W**) (star witness - employment

8      discrimination)

9      – Declaration of Jonathan Temple (**Exhibit U**) (pattern and conspiracy witness)

10     – Declaration of Roxane Pasamba (disability witness)

11     – Declaration of Dr. Maria Catalina Cuervo (medical expert)

12     – Multiple sworn declarations of Thomas Joseph Goddard

13     **H.  Statistical & Pattern Evidence**

14     – Comprehensive Statistical Analysis of 648 Discrimination Events (1933–February 7,

15     2026) spanning 93.10 years

16     – Chi-square analysis: $\chi^2 = 18,680.4$ (df=1, $p < 10^{-4056}$)

17     – Pre-October 7, 2023: 87 events over 90.76 years (0.958 events/year)

18     – Post-October 7, 2023: 561 events over 2.34 years (239.7 events/year)

19     – Acceleration factor: 250.0× post-October 7 escalation

20     – Anniversary date clustering: Z-score = 17.24

21     – Bayesian probability calculations (Bayes Factor $> 10^{52}$—decisive evidence of

22     systematic coordination)

23     – Cross-institutional coordination matrix (19+ entities, combined market

24     capitalization exceeding \$5.9 trillion)

25     – Chronological timeline of discrimination events (**Exhibit 12**)

26     – Goldman Sachs AGI Framework: \$125 trillion economic impact projection

27     (2025–2035)

28     – Monte Carlo validation: 10 million simulations, zero produced comparable $\chi^2$

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    values

2    — 107.3 standard deviations from expected values (*Castaneda* requires 2–3)

3    The statistical evidence establishes that the probability of these events occurring

4    randomly is less than $10^{-4056}$, which exceeds the particle physics discovery threshold by

5    $10^{2138}$ times.[3]

6    ### I.  Discrimination Event Database

7    — **Exhibit XXXXXX:** Complete Discrimination Event Database—648 documented

8    events spanning 93.10 years (1933–2026) with unique hexadecimal Event IDs

9    (0x001–0x3FF+), dates, categories, descriptions, and cross-references to supporting

10    exhibits.[4]

11    — **Exhibit XXXXXX-A:** Supplemental Event Database containing events

12    documented after initial filing, maintaining chronological continuity with the

13    primary database

14    — Event categories: Employment Discrimination, Housing Discrimination,

15    Medical/Healthcare Denial, Financial Retaliation, Technical Sabotage, Judicial

16    Misconduct, Psychiatrification (weaponization of psychiatric proceedings to

17    discredit civil rights complainants), Omnidiscrimination (coordinated

18    multi-institutional cross-domain targeting across 19+ entities), and Antisemitech

19    (antisemitic discrimination within the technology industry)

20    ### J.  Criminal Proceedings

21    California Criminal Case No. 01-24-03484 (*People v. Goddard*, Contra Costa Super.

22    Ct., Dept. 10, Hon. Julia Campins):

23    — Criminal proceedings coordinated with civil discrimination, seizure of assistive

24    technology devices, constitutional violations

25    — Motion for Return of Seized Property (Penal Code § 1536)

26    — Documentation of assistive technology seizure affecting ADA accommodation

27    [3]Under *Castaneda v. Partida*, 430 U.S. 482, 496-97 (1977), a 2-3 standard deviation disparity establishes prima facie discrimination. Under *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 311 n.17 (1977), disparities greater than 2-3 standard deviations are "significant." The pattern documented here exceeds these thresholds by factors greater than $10^{2400}$.

28    [4]Exhibits XXXXXX and XXXXXX-A use the "X" designation because Plaintiff continually updates them as additional events are documented. Each event has a unique hexadecimal identifier (e.g., 0x029 = October 7 Hamas attacks; 0x02B = Apple rescission; 0x100 = Slickdeals termination) enabling precise cross-referencing across all proceedings.

1    access

2  – Evidence of telecommunications records sought in criminal discovery

3  – January 8, 2026 court proceedings (Events 0x35F–0x368):

4    scheduling conflict forcing plaintiff to miss civil case hearing (0x35F);

5    ADA accommodation denial (0x360);

6    false accusation by DA and attempted custody (0x361);

7    counsel waiver against client demands (0x362);

8    weaponized competency evaluation (0x363);

9    silencing through bailiff intimidation (0x364);

10    post-hearing stalking observation (0x366)

11  – January 9, 2026 medical emergency with suspected drugging (Event 0x368)

12  – Faretta rights violations documented in Ninth Circuit emergency petition (25-6676,

13    Dkt. 29, pp. 1–702)

14  – Concord PD detention September 12, 2024 (Event 76D)—Lead Investigator Clifton

15    Huffmaster; Stars of David in detention cells; "Hebrew slave" epithet; attorney

16    access denied 5 hours (Sixth Amendment violation)

17    The seizure of Plaintiff's assistive technology devices directly impacted ability to

18  communicate through ADA-compliant channels, creating a nexus between criminal

19  proceedings and civil discrimination. *See* Events 0x35F–0x368; Ninth Circuit Appeal

20  No. 25-6676, Dkt. 29.

21    **K.    Financial Institution Evidence**

22    The following evidence supplements the claims documented in *Goddard*

23  *v. JPMorgan Chase Bank, N.A., et al.*, Case No. 3:26-cv-01042-PHK:

24  – Exhibit R-3: Chase Bank Financial Discrimination and Retaliatory Vehicle

25    Repossession

26  – Use of interstate financial networks to compromise Plaintiff's Chase Bank accounts,

27    extending retaliation into financial sabotage affecting federally insured banking

28    transactions

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

### L. Incorporated Judicial Decisions

Pursuant to Federal Rule of Evidence 201 and Federal Rule of Civil Procedure 10(c), the following judicial decisions and related proceedings with their underlying evidentiary records are incorporated by reference:

– **Exhibit NNN:** *Epic Games, Inc. v. Apple Inc.*, No. 25-2935 (9th Cir. Dec. 11, 2025), slip opinion and all exhibits referenced therein, including:

  – District court evidentiary record from *Epic III*, 781 F. Supp. 3d 943 (N.D. Cal. 2025)

  – Apple's internal presentations titled "Proposed responses to Epic injunction" and "Epic Injunction Implementation Proposal" demonstrating manufactured post-hoc justifications

  – District court's criminal referral of Apple and corporate officer

  – Ninth Circuit holdings on:

    (a) manufactured "sham" justifications;

    (b) violations of "spirit" of legal obligations;

    (c) "schemes to evade" legal compliance;

    (d) burden-as-prohibition under *M'Culloch v. Maryland*

– **Exhibit OOO:** *Goddard v. Slickdeals, LLC*, Alameda County Superior Court Case No. 25CV153783, CRD Matter No. 202502-28171117, filed pursuant to California Civil Rights Department Right to Sue (Feb. 18, 2025), as more fully described in the Incorporated State Court Proceedings section above, including all verified complaint allegations, exhibits, witness declarations, and documentary evidence filed therein.

– **Exhibit PPP:** *Thakur v. Trump*, No. 25-4249 (9th Cir. Dec. 23, 2025)—viewpoint-based discrimination precedent directly applicable to Plaintiff's claims:

  – Holding that government cannot "aim at the suppression of dangerous ideas" in employment or funding decisions, *id.* at 13 (quoting *Regan v. Tax'n With*

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1         *Representation of Wash.*, 461 U.S. 540, 550 (1983))

2     –  Establishing that viewpoint-based terminations violate the First Amendment,

3        particularly where the record shows "the government aimed at the suppression

4        of speech that views [certain viewpoints] favorably," *id.* at 16

5     –  Applying the principle from *Rosenberger v. Rector & Visitors of Univ. of Va.*,

6        515 U.S. 819, 831 (1995), that institutions "may not silence the expression of

7        selected viewpoints"

8     –  Recognizing that "DEI, DEIA, and environmental justice are not merely

9        neutral topics" but "inherently convey the viewpoint that the exclusion of

10       historically disadvantaged groups is undesirable," *id.* at 13—directly analogous

11       to Plaintiff's Jewish identity and protected religious viewpoint

12     –  Affirming that the government "cannot suffer harm from an injunction that

13       merely ends an unlawful practice," *id.* at 17 (quoting *Rodriguez v. Robbins*,

14       715 F.3d 1127, 1145 (9th Cir. 2013))

15    **M.   Cross-Institutional Coordination Evidence**

16        The following entities are documented as participating in coordinated

17 discrimination:

18     –  **Technology Sector:** Apple Inc., Amazon.com Inc., Microsoft Corporation,

19       Hewlett-Packard, Anthropic PBC, OpenAI, Slickdeals LLC, Tesla Inc., SpaceX

20     –  **Financial Services:** JPMorgan Chase Bank N.A., Bank of America, Goldman

21       Sachs

22     –  **Telecommunications:** Verizon Communications Inc., AT&T, Sprint, T-Mobile

23     –  **Government Entities:** Contra Costa County, California Courts, Contra Costa

24       DA (Diana Becton)

25     –  **Insurance:** Guardian Life Insurance Company of America

26     –  **Healthcare/Retail:** Warby Parker Inc.

27     –  **Postal/Services:** Stamps.com Inc.

28     –  **International:** Cryptograph.com/Perpetual Altruism LTD (London), Iranian

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

1    Republican Guard network

2    –   **Individuals:** Reid Hoffman, Dario Amodei, Sam Altman, Elon Musk, Shabnam

3    Amiri, Mandana Arjmand

4    The cross-institutional coordination matrix demonstrates that discrimination

5    against Plaintiff is not isolated but represents participation in a coordinated campaign

6    involving 19+ entities. The temporal clustering of discriminatory events across these

7    entities creates a statistical signature impossible to occur through random chance.[5]

8    **N.   Effect of Incorporation**

9    All documents incorporated by reference herein shall be considered as if fully set

10   forth in this Complaint, supporting all claims and allegations that follow.

11   To the extent any incorporated document contains factual allegations or evidence

12   relevant to the claims herein, such allegations and evidence are adopted and incorporated

13   as if pleaded directly in this Complaint.

14   The incorporation of these documents establishes the broader pattern of

15   coordinated discrimination, trade secret theft, and civil rights violations of which

16   Defendants' conduct forms an integral part.

17   **VI.   FACTUAL ALLEGATIONS**

18   **A.   Background: The Prior Federal Action**

19   17. On July 14, 2025, Plaintiff filed a complaint in this Court alleging Fair Housing

20   Act and ADA violations by Defendants (Case No. 3:25-cv-05882-EMC). On July 16, 2025,

21   Judge Chen granted a temporary restraining order *in part.* On August 13, 2025, the

22   preliminary injunction was denied. On October 21, 2025, Judge Chen granted Defendants'

23   motion to dismiss with prejudice.[6]

24   18. The prior action arose from Defendants' categorical denial of Plaintiff's

25   reasonable accommodation request—a six-day adjustment to rent payment timing from

---

26   [5]Under RICO, 18 U.S.C. § 1962(c)-(d), coordinated activity across multiple enterprises to deprive an individual of civil rights may
constitute a pattern of racketeering activity. The statistical evidence of coordination ($p < 10^{-4056}$) far exceeds the threshold required
to establish RICO pattern.

27   [6]Plaintiff has appealed the dismissal to the Ninth Circuit (Case No. 25-6676). The opening brief (842 pages) was filed January 2,
2026. On February 9, 2026, Plaintiff filed an Emergency Motion for Stay of Eviction Pending Appeal (Dkt. 32.1, 286 pages) under

28   Fed. R. App. P. 8(a)(2) and 9th Cir. R. 27-3, applying the *Nken v. Holder,* 556 U.S. 418 (2009), four-factor test. That motion is pending.
An earlier interlocutory appeal (Case No. 25-5230) was dismissed December 23, 2025. This Complaint does not seek to relitigate the
dismissed claims but addresses exclusively new post-dismissal conduct.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    the 1st to the 7th of each month, to align with California State Disability Insurance

2    payments. On May 23, 2025, Defendants granted the accommodation in writing through

3    Assistant Manager Alexis Hazard: "As agreed, you have been given a reasonable recurring

4    accommodation of making rent payments on the 7th of each month, along with

5    management not posting the standard 3 day notice to pay rent or quit as well as waiving

6    the regular late fee of $50 accessed on the 5th of each month." Defendants subsequently

7    violated this accommodation on July 10, July 22, and September 18, 2025.

8    **B.    Pre-Dismissal Retaliatory Pattern Establishing Motive**

9        19. Although the claims herein arise from post-dismissal conduct, Defendants'

10    pre-dismissal conduct is relevant to establishing retaliatory motive and a pattern of

11    discrimination. Before October 21, 2025:

12        (a)    **July 15, 2024**: Plaintiff signed the NOMA lease under duress on the

13                exact same day as his employment termination from Slickdeals,

14                exploiting his housing vulnerability during crisis (Event 0x04B);

15        (b)    **March 3, 2025**: Plaintiff submitted his first reasonable accommodation

16                request to NOMA for rent payment timing adjustment from the 1st to

17                the 7th of each month, to align with California State Disability

18                Insurance payments (Event 0x079);

19        (c)    **March 4, 2025**: Defendants denied the accommodation *one day* after

20                the request, establishing a pattern of retaliatory one-day response times

21                (Event 0x07A);

22        (d)    **May 23, 2025**: Assistant Manager Alexis Hazard granted the

23                accommodation in writing, but simultaneously added a blanket

24                categorical denial: "Future requests will not be granted"—a per se

25                violation of the FHA's interactive process requirement (Events 0x0AF,

26                0x0B0);[7]

---

[7]The written accommodation grant and simultaneous categorical denial are documented in the correspondence exhibits. The accommodation email states: "As agreed, you have been given a reasonable recurring accommodation of making rent payments on the 7th of each month, along with management not posting the standard 3 day notice to pay rent or quit as well as waiving the regular late fee of $50 accessed on the 5th of each month." The one-day-later blanket denial—"Future requests will not be granted" (Event 0x0B0)—constitutes a per se refusal to engage in the interactive process required under *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1154

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

(e) **May 30, 2025**: Plaintiff submitted a comprehensive accommodation request with UCSF medical documentation; Defendants ignored it for 44 days, constituting constructive denial (Event 0x0B5);

(f) **July 10, 2025**: On the same day that NOMA served Plaintiff with a retaliatory three-day eviction notice, Chase Bank imposed undisclosed account restrictions denying Plaintiff access to loan modification documents and financial records—within 24 hours of Plaintiff's emergency room treatment for hypertensive crisis (168/103 mmHg). The statistical probability of same-day coordination by coincidence is $p < 0.003$ (Event 0x40E);

(g) **July 11, 2025**: CRD notified Plaintiff that "NOMA and respondents have declined to participate in the mediation or conciliation process," blocking administrative resolution and demonstrating bad faith (Event 0x0D1);

(h) **~July 2025**: While in the apartment building elevator, Plaintiff's neighbor—residing one door southwest in the hallway—stated "good morning, your honor" under his breath, indicating surveillance of Plaintiff's court proceedings and litigation activities by building residents (Event 0x477);

(i) **July 22, 2025**: Defendants blocked Plaintiff's online payment portal eight days after the federal complaint was filed, preventing rent payment and manufacturing a basis for eviction (Event 0x0D4);

(j) **August 20, 2025**: Attorney Tiffany Truong offered to "waive current unpaid balance" if Plaintiff would vacate—attempting to purchase Plaintiff's silence regarding civil rights violations (Event 0x0E6);

(k) **September 18, 2025**: Defendants served a three-day eviction notice on the *exact same day* they filed their Motion to Dismiss in the federal court, demonstrating intentional coordination between eviction

(9th Cir. 2003).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

proceedings and civil rights litigation (Event 0x33F) (**Exhibit NN**). On the same day, Mandana Arjmand conducted vehicular surveillance of Plaintiff at Locus/Civic Drive, Walnut Creek, in a black SUV (license plate 8GYF119) (Event 0x440);

(l)    ~**October 2025**: The same neighbor from Event 0x477 entered Plaintiff's apartment uninvited without knocking or announcement, looked directly at Plaintiff, said "I'm sorry," turned around, and walked away—escalating from verbal intimidation to physical trespass of Plaintiff's residence (Event 0x478);

(m)    **October 14–16, 2025**: After Plaintiff requested accessible email formatting (black text on white background) as an ADA accommodation, Attorney Truong continued sending emails with yellow backgrounds and white text, deliberately violating accessibility requirements (Events 0x339, 0x33D).

**C.    Post-Dismissal Retaliatory Conduct**

20. **November 14, 2025 — Hospitalization from Habitability Violations (Event 0x186).** Plaintiff was hospitalized for a parasitic infection caused by a louse infestation in his apartment unit (**Exhibit D**). The infestation constitutes a biohazard under California Health & Safety Code § 17920.3. Defendants were aware of the infestation and Plaintiff's immunocompromised status (asplenia) but failed to remediate the condition. The unit's in-unit washer had been malfunctioning since early November 2025, with the hot water setting non-functional, preventing Plaintiff from sanitizing contaminated items. Plaintiff submitted multiple repair requests that Defendants ignored.

21. **November 17–18, 2025 –- Unlawful Detainer Filed While Plaintiff Bedridden (Event 0x187).** Three days after Plaintiff's hospitalization—and while Plaintiff remained bedridden recovering from the parasitic infection—Defendants filed an unlawful detainer action (Case No. MS25-0977, Contra Costa Superior Court). The timing demonstrates knowing exploitation of Plaintiff's medical vulnerability:

(a)   Filed **three days** after hospitalization caused by Defendants' own habitability violations;

(b)   Filed less than **one month** after the federal case dismissal (October 21, 2025);

(c)   Filed less than **three weeks** after Plaintiff filed a First Amended Complaint in the state case (Case No. C25-02263) explicitly alleging retaliatory eviction (December 1, 2025, Event 0x462);

(d)   Filed during the pendency of the Ninth Circuit appeal (Case No. 25-6676);

(e)   Filed during active CRD investigation (Case No. 202505-29527122) and HUD investigation (Case No. 09-25-6671-8);

(f)   Filed while Plaintiff had no legal representation—the entire Contra Costa Superior Court bench had recused itself, with Presiding Judge Christopher R. Bowen issuing an order stating "there is no judge of this court qualified to hear this action" (Event 0x102, August 4, 2025).

22. **November 24, 2025 — Service During Medical Incapacity.** The unlawful detainer was served on Plaintiff while he remained medically incapacitated from the infection caused by Defendants' habitability violations.

23. **December 1, 2025 — Retaliatory Filing Acceleration.** Plaintiff filed his First Amended Complaint in the state court proceedings (Case No. C25-02263) specifically alleging that any eviction proceedings would constitute retaliation for protected civil rights activities (Event 0x462). Defendants accelerated their eviction efforts in response.

24. **December 2, 2025 — Medical Record Falsification (Event 0x188).** During Plaintiff's ninth emergency room visit—for a cervical tear with hypertensive crisis (BP 171/119 mmHg) (**Exhibit D**)—LCSW Robert V created a deliberately false Social Services Note characterizing Plaintiff as "delusional" for describing his documented employment discrimination litigation. LCSW Robert V also made unauthorized HIPAA-violating contact with Plaintiff's mother without Plaintiff's consent. This

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

falsification exemplifies the weaponization of the mental health system against pro se civil rights litigants during eviction proceedings.[8]

25. **December 19, 2025 — Courtroom Medical Crisis (Event 0x18E).** During court proceedings in Department 27 of Contra Costa Superior Court, Plaintiff experienced a medical crisis. The bailiff observed the crisis, stating "he's killing himself," but no medical intervention was provided—constituting deliberate indifference to a known medical emergency in government custody. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference to serious medical needs violates the Constitution).

26. **December 22, 2025 — ADA Denial and Tenth ER Visit (Events 0x189, 0x18A).** Judge Christopher R. Bowen of the Contra Costa Superior Court denied Plaintiff's ADA accommodation request in the unlawful detainer proceedings (Case No. MS25-0977) (**Exhibit PP**). This denial violated *Tennessee v. Lane*, 541 U.S. 509 (2004), which requires courts to provide meaningful access to judicial proceedings for disabled persons. On the same day, Plaintiff presented to the emergency room with hypertensive crisis (BP 176/131 mmHg), rectal bleeding, and was treated with IV morphine (**Exhibit D**). CT imaging revealed new 5mm renal calculi (**Exhibit T**). This was Plaintiff's tenth emergency room visit directly attributable to the housing discrimination and retaliatory eviction pattern, with documented correlation coefficient $r = 0.94$ ($p < 0.001$) between discriminatory events and medical emergencies.[9]

27. **December 30, 2025 — Retaliatory Motion to Dismiss (Event 0x18C).** Attorney Tiffany Truong filed a Motion to Dismiss in the Ninth Circuit (Case No. 25-6676) *exactly one day* after Plaintiff's December 29, 2025 medical notification to all counsel and Circuit Mediator Stephen Liacouras documenting ongoing disability-related medical emergencies. This continues the documented pattern of one-day retaliatory responses:

---

[8] On information and belief, this pattern of psychiatric weaponization mirrors the pattern documented in Plaintiff's related cases. *See Goddard v. Campins* (N.D. Cal. 2026) (weaponized competency evaluations under PC 1369); *Goddard v. Slickdeals, LLC*, No. 3:26-cv-01039-AGT (N.D. Cal. 2026) (termination during 5150 psychiatric hold). The pattern is consistent with the phenomenon documented in *Sell v. United States*, 539 U.S. 166 (2003), wherein the psychiatric system is weaponized against individuals asserting legal rights.

[9] The documented $r = 0.94$ correlation means that 88.4% of the variance in Plaintiff's medical emergencies is statistically explained by the timing of discriminatory housing actions. This correlation, established through longitudinal analysis of nine prior emergency room visits spanning May–December 2025, constitutes objective medical evidence of causation under the "more probable than not" standard. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) (statistical evidence admissible when based on scientifically valid methodology).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

(1) March 4, 2025: accommodation denial one day after request;

(2) December 30, 2025: Motion to Dismiss one day after medical notification.

28. **January 2–3, 2026 — Filing Court Record Manipulation (Event 0x18F).** Plaintiff attempted to file motions in the state court case (Case No. C25-02263/MS25-0977) and was rejected three times. On the third rejection (January 2, 2026), the court ledger showed the January 2, 2026 date crossed out and replaced with June 4, 2026—demonstrating manipulation of court records. This constitutes obstruction of justice and denial of access to courts. *See Boddie v. Connecticut*, 401 U.S. 371 (1971) (due process requires meaningful access to courts).

29. **February 3, 2026 — Sheriff Notice to Vacate.** The Contra Costa County Sheriff's Office served Plaintiff with a Notice to Vacate pursuant to Writ of Execution EJ-130, Levying Officer File No. 2026000538, Writ Reference No. 25-7153590, ordering Plaintiff to vacate Unit 627 by **February 17, 2026**. The underlying judgment reflects $0.00 in principal, $0.00 in costs, and $0.00 in interest—only $40.00 in writ fees. The eviction is not based on any monetary debt.[10]

30. **February 6, 2026 — Refusal to Delay Lockout.** Defendants' counsel, Tiffany D. Truong of Kimball, Tirey & St. John LLP, confirmed via email that her clients "declined Mr. Goddard's request to delay or cancel the sheriff lockout." Defendants refused to agree to any resolution or delay before the February 17 lockout. The Ninth Circuit's Chief Circuit Mediator subsequently released the case from the Court's mediation program by order dated February 8, 2026 (**Exhibit MRO**), because the scheduled lockout made completion of mediation impossible.[11]

31. **February 6, 2026 — Coordinated Retaliatory Filing.** On the same day that Defendants refused to delay the lockout, Shabnam Amiri—whose antisemitic

---

[10]The $0.00 judgment amount is dispositive: it demonstrates that the unlawful detainer was not motivated by financial recovery (which is the purpose of the unlawful detainer statute) but by retaliatory intent. Under *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), a reasonable person would find eviction from one's home "materially adverse." The $0.00 judgment, combined with the temporal proximity to the federal lawsuit and appeal, creates an overwhelming inference of retaliation. *See also Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (rejecting "heightened harm" requirement for discrimination claims—any disadvantageous change suffices).

[11]Defendants' pattern of refusing alternative dispute resolution predates the mediation. On July 11, 2025, CRD notified Plaintiff that "NOMA and respondents have declined to participate in the mediation or conciliation process" (Event 0x0D1). In the Ninth Circuit appeal, the scheduled lockout similarly rendered mediation impossible, leading to the Chief Circuit Mediator's February 8, 2026 order releasing the case from the program. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (good faith requires genuine attempt to resolve dispute, not tactical maneuvering).

Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

1    messages ("Hebrew slave," "so Jewish and cheap," "Why did you Jew us") are

2    documented (**Exhibits AMIRI, BB**)—filed a First Amended Motion in *Amiri*

3    *v. Goddard*, Case No. D24-03337, in apparent coordination with the eviction timeline

4    (Event 0x406). Notably, the Contra Costa Superior Court had already dismissed Amiri's

5    DVRO petition (Case MSC21-02118) *with prejudice* in January 2026 (Event

6    0x451)—validating Plaintiff's position that the petition was retaliatory and without

7    merit—yet Amiri continued filing coordinated motions. This temporal coordination

8    between Amiri's legal filings and Defendants' eviction actions further evidences the

9    conspiracy alleged in Count Seven.

10       31A. **February 8, 2026 — Mediation Release Order.** By order dated

11   February 8, 2026, Chief Circuit Mediator Stephen M. Liacouras released Case No. 25-6676

12   from the Ninth Circuit's mediation program (**Exhibit MRO**) because the scheduled

13   lockout made completion of mediation impossible. This order demonstrates that

14   Defendants' retaliatory eviction has already destroyed one court process—and if not

15   enjoined, will destroy the appellate process as well.

16       31B. **February 9, 2026 — Emergency Motion for Stay Filed in Ninth**

17   **Circuit.** Plaintiff filed an Emergency Motion for Stay of Eviction Pending Appeal in the

18   Ninth Circuit (Case No. 25-6676, Dkt. 32.1, 286 pages) pursuant to

19   Fed. R. App. P. 8(a)(2) and 9th Cir. R. 27-3.[12] This Complaint and the concurrently filed

20   Emergency TRO Application provide an independent basis for a stay through this Court's

21   original jurisdiction, based on the new post-dismissal claims that were not and could not

22   have been raised in the prior action. *See Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (42

---

[12]Plaintiff was unable to seek a stay from the district court because Judge Chen imposed filing restrictions (Dkt. 49) precluding additional filings, and the district court struck Plaintiff's notice of appeal (Dkt. 62). *See* Fed. R. App. P. 8(a)(2)(A)(ii) (stay may be sought directly from court of appeals where "moving first in the district court would be impracticable"). The Ninth Circuit motion applied the four-factor stay test from *Nken v. Holder*, 556 U.S. 418, 434 (2009), and the "serious questions" sliding scale of *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011), demonstrating:
(1) serious questions going to the merits, including Defendants' three documented violations of a written accommodation grant and the viability of new post-dismissal claims under *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 328 (1955);
(2) irreparable harm from physician-certified risk of death, *see Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[t]he loss of one's home is typically irreparable");
(3) the balance of hardships tipping sharply in Plaintiff's favor given the $0.00 judgment, *see Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); and
(4) the public interest in Fair Housing Act enforcement, *see Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 211 (1972) (FHA serves "broad and inclusive" remedial purpose). The motion further argued that a stay would restore the Ninth Circuit mediation process, serving this Court's institutional interest in its mediation program. That motion is pending as of the date of this filing.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    U.S.C. § 1983 is an "expressly authorized" exception to the Anti-Injunction Act,

2    permitting federal courts to enjoin state court proceedings).

3    **D.  Habitability Violations**

4        32. Since approximately November 2025, Unit 627 has suffered from the following

5    habitability defects that Defendants have failed to remediate despite notice:

6        (a)    **Parasitic louse infestation**: Constituting a biohazard under Cal.

7               Health & Safety Code § 17920.3 and directly causing Plaintiff's

8               November 14, 2025 hospitalization. The infestation renders the premises

9               "substandard" as a matter of law. *See Stoiber v. Honeychuck*, 101 Cal.

10              App. 3d 903, 918–20 (1980) (vermin infestation constitutes material

11              habitability violation);

12       (b)    **Non-functional washer (hot water)**: The in-unit washer's hot water

13              setting has been inoperable since early November 2025, preventing

14              Plaintiff from sanitizing items contaminated by the parasitic

15              infestation—particularly dangerous given Plaintiff's

16              immunocompromised status (asplenia);

17       (c)    **Water service interruption**: On November 11, 2025, water service

18              was interrupted during Plaintiff's decontamination efforts, constituting a

19              violation of Cal. Civ. Code § 789.3 (prohibiting landlord from

20              interrupting utilities);

21       (d)    **Failure to respond to repair requests**: Defendants ignored multiple

22              documented repair requests regarding the infestation and washer

23              malfunction, despite their legal obligation under Cal. Civ. Code § 1941

24              to maintain the premises in habitable condition.

25       33. These habitability violations are particularly egregious because Defendants had

26   actual knowledge of Plaintiff's severely immunocompromised status from the reasonable

27   accommodation requests and medical documentation submitted throughout 2025

28   (**Exhibits S, D**), including UCSF medical documentation submitted with the May 30,

1  2025 accommodation request (Event 0x0B5). Maintaining a biohazardous environment for

2  a tenant without a spleen—who faces potentially fatal infection risk—while

3  simultaneously pursuing eviction constitutes deliberate indifference to Plaintiff's health

4  and safety. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 450 (1985)

5  (heightened scrutiny where government action burdens disabled persons); *Olmstead*

6  *v. L.C.*, 527 U.S. 581, 607 (1999) (unjustified institutional segregation of disabled persons

7  constitutes discrimination).

8       34. The habitability violations also constitute a complete defense to the unlawful

9  detainer under California law. A landlord who fails to maintain habitable premises may

10  not evict a tenant for nonpayment of rent. *Green v. Superior Court*, 10 Cal. 3d 616, 631

11  (1974). Here, Defendants' own habitability violations caused Plaintiff's hospitalization,

12  and Defendants filed the unlawful detainer while Plaintiff was still recovering from the

13  hospitalization those violations caused. The circularity is damning: Defendants created

14  the biohazard, hospitalized Plaintiff with the biohazard, then evicted Plaintiff while he

15  was hospitalized from the biohazard.

16       **E.  Medical Emergency**

17       35. Plaintiff's treating physician, Dr. Maria Catalina Cuervo, MD, of UCSF

18  Health, has certified that Plaintiff's housing instability "is not a civil matter but a

19  medical emergency requiring immediate intervention to minimize morbidity" and has

20  warned that homelessness could result in "stroke, heart attack, or death" (**Exhibit S**).

21  UCSF has approved 100% financial assistance for Plaintiff through February 2026

22  (Account 101056975), reflecting the severity of his medical condition and indigency.

23       36. Since May 2025, Plaintiff has made at least ten emergency room visits with

24  conditions directly attributable to the housing discrimination pattern (**Exhibits D, T**),

25  including:

26       (a)    June 1, 2025: Acute gout, pain 9/10;

27       (b)    June 4, 2025: Blood pressure 149/111 mmHg;

28       (c)    June 10, 2025: Blood pressure 156/113 mmHg;

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

— 40 —

(d)     June 13, 2025: Glucose 193 mg/dL (diabetic crisis), WBC 13.36 (elevated white blood cell count indicating immune response in a patient without a spleen);

(e)     June 26, 2025: Blood pressure 143/95 mmHg;

(f)     July 9, 2025: Hypertensive crisis 168/103 mmHg with gastrointestinal bleeding;

(g)     August 10, 2025: ER visit (cumulative harm);

(h)     November 14, 2025: Parasitic infection hospitalization (Event 0x186);

(i)     December 2, 2025: Cervical tear with hypertensive crisis 171/119 mmHg (Event 0x188);

(j)     December 22, 2025: Hypertensive crisis 176/131 mmHg, rectal bleeding, IV morphine, renal calculi (Event 0x189).

37. The escalating severity of these medical events—from elevated blood pressure in June 2025 to life-threatening hypertensive crises, internal bleeding, and organ damage by December 2025—demonstrates a direct causal trajectory from Defendants' discriminatory conduct to physical harm. The blood pressure trajectory alone is alarming: 149/111 → 156/113 → 168/103 → 171/119 → 176/131 mmHg. Each reading exceeds the threshold for "hypertensive emergency" (180/120), which carries risk of stroke, organ damage, and death. Rendering Plaintiff homeless on February 17, 2026, with documented asplenia, active renal calculi, and escalating hypertensive crises, poses an imminent risk of death.

38. Plaintiff's medical conditions are independently life-threatening in the absence of shelter. A person without a spleen is classified as "functionally asplenic" and is at heightened risk of overwhelming post-splenectomy infection (OPSI), which carries a mortality rate of 50–70% even with treatment. Homelessness would expose Plaintiff to environmental pathogens, eliminate access to prophylactic antibiotics, and render timely emergency care unlikely.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

### F.   Connection to Broader Pattern of Coordinated Discrimination

39. The retaliatory eviction alleged herein is not an isolated act but part of a documented pattern of coordinated, cross-institutional discrimination targeting Plaintiff because of his Jewish heritage and disabilities. Plaintiff's related federal cases document:

    (a)   648 total documented discriminatory events spanning 1933–2026 (**Exhibit 12**) with $\chi^2 = 18{,}832.1$ ($p < 10^{-4014}$), constituting mathematical proof of systematic coordination (*see Goddard v. County of Contra Costa*, No. 3:25-cv-02910-CRB (N.D. Cal.), Dkt. 36 (statistical analysis); Exhibit XXXXXX (complete discrimination event database));

    (b)   A $251.4\times$ acceleration in targeting following October 7, 2023—consistent with the Anti-Defamation League's documented 140% increase in U.S. antisemitic incidents in 2023 (8,873 total), the 360% surge in the immediate aftermath of October 7, and a record-breaking 9,354 incidents in 2024 (an 893% increase over ten years). The President of the United States has recognized this crisis through Executive Order 14188 (January 29, 2025), declaring it "the policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools";

    (c)   Cross-institutional coordination coefficient $\rho = 0.97$ ($p < 10^{-300}$) connecting events across employment (Slickdeals), housing (NoMa/Sares-Regis), judicial (Contra Costa Superior Court), and technology (Anthropic, Apple) domains;

    (d)   Eigenvalue centrality analysis identifying NoMa housing discrimination (Event 0x0CF) as one of the three primary "hub" events alongside Apple (Event 0x04C) and Slickdeals (Event 0x05E);

    (e)   Anniversary-precision targeting: Employment termination July 15, 2024; lease signed under duress the same day (Event 0x04B); NOMA eviction proceedings initiated exactly July 15, 2025 (365 days later), yielding $Z = 10.66$ standard deviations ($p < 10^{-26}$) (**Exhibit NN**). *See*

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1            *Castaneda v. Partida*, 430 U.S. 482, 496 n.17 (1977) (statistical analysis

2            admissible to demonstrate intentional discrimination);

3    (f)    Network connections between Defendants' counsel and judicial actors:

4            On information and belief, Attorney Tiffany D. Truong has working

5            relationships with Judge Julia Campins and Mandana Mir Arjmand

6            through an insurance defense firm associated with Sares-Regis Group

7            (*see Goddard v. Campins*, ¶¶ 11(e)–(f); (**Exhibit EE**)) (Event

8            0x367—Campins-Truong-Arjmand network documented);

9    (g)    The February 2, 2026 simultaneous filing of seven federal complaints was

10            followed immediately by the Sheriff's service of the Notice to Vacate on

11            February 3, 2026—a one-day gap constituting the most extreme

12            temporal proximity yet;

13    (h)    Physical intrusions at the NOMA property: a neighbor's "good morning,

14            your honor" surveillance remark in the elevator (Event 0x477, ~July

15            2025), the same neighbor's uninvited entry into Plaintiff's apartment

16            (Event 0x478, ~October 2025), and the discovery on February 8, 2026

17            that Plaintiff's USB backup drive had been physically unplugged from

18            his computer during a brief absence—indicating unauthorized entry and

19            deliberate tampering with litigation materials (Event 0x479).

20       40. On information and belief, the timing of the sheriff lockout—during the

21 pendency of a Ninth Circuit appeal and after the scheduled lockout caused the Chief

22 Circuit Mediator to release the case from the mediation program by order dated February

23 8, 2026 (**Exhibit MRO**)—is part of the coordinated campaign to deprive Plaintiff of

24 housing, access to justice, and ultimately his life. Plaintiff alleges these facts subject to

25 confirmation through discovery, in accordance with Fed. R. Civ. P. 11(b). *See Dennis*

26 *v. Sparks*, 449 U.S. 24, 27–28 (1980) (private parties who conspire with state actors to

27 deprive individuals of constitutional rights may be held liable under § 1983).

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    **VII.   CAUSES OF ACTION**

2                 **A. FIRST CAUSE OF ACTION**

3                    **Fair Housing Act — Retaliation**

4                       **42 U.S.C. § 3617**

5                    **(Against All Defendants)**

6        41. Plaintiff incorporates all preceding paragraphs by reference as though fully set

7    forth herein.

8        42. Section 3617 of the Fair Housing Act provides: "It shall be unlawful to coerce,

9    intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on

10   account of his having exercised or enjoyed, or on account of his having aided or encouraged

11   any other person in the exercise or enjoyment of, any right granted or protected by" the

12   FHA. To establish a prima facie case of FHA retaliation, Plaintiff must show:

13       (1) he engaged in protected activity;

14       (2) Defendants subjected him to a materially adverse action; and

15       (3) a causal connection exists between the two. *Walker v. City of Lakewood*, 272

16   F.3d 1114, 1128 (9th Cir. 2001). Under *Burlington N. & Santa Fe Ry. Co. v. White*, 548

17   U.S. 53, 68 (2006), a "materially adverse" action is one that "would have been materially

18   adverse to a reasonable employee or job applicant," meaning "harmful to the point that

19   [it] could well dissuade a reasonable [person] from making or supporting a charge of

20   discrimination." Section 3617 applies broadly—the retaliator need not be the

21   complainant's direct housing provider. *See Hollis v. R & R Restaurants, Inc.*, No. 24-2464

22   (9th Cir. 2025) (anti-retaliation provisions extend to parties acting "directly or indirectly"

23   in the interest of the primary actor). All three elements are satisfied here.

24       43. **Protected Activity.** Plaintiff engaged in protected activity by:

25       (a)    Filing a federal housing discrimination complaint (Case

26              No. 3:25-cv-05882-EMC, July 14, 2025);

27       (b)    Filing CRD complaints (Case No. 202505-29527122) (**Exhibit A**);

28       (c)    Filing HUD complaints (Case No. 09-25-6671-8);

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

(d)   Requesting reasonable accommodations based on disability;

(e)   Appealing the dismissal to the Ninth Circuit (Case No. 25-6676, October 22, 2025);

(f)   Participating in Ninth Circuit appellate proceedings, including mediation (December 2025–February 2026).

44. **Adverse Action.** Following Plaintiff's protected activities, Defendants committed the following adverse retaliatory acts—all occurring **after** the October 21, 2025 dismissal:[13]

(a)   Failing to remediate biohazardous conditions (parasitic infestation, broken washer) despite knowledge of Plaintiff's immunocompromised status (November 2025);

(b)   Filing the unlawful detainer action three days after Plaintiff's hospitalization from those very habitability violations (November 17–18, 2025);

(c)   Serving the unlawful detainer while Plaintiff was bedridden (November 24, 2025);

(d)   Executing a Writ of Possession on a $0.00 judgment to render Plaintiff homeless (February 3, 2026);

(e)   Refusing to delay the lockout despite a pending Ninth Circuit appeal (February 6, 2026);

(f)   Proceeding with the lockout despite this Court's pending Ninth Circuit mediation process, resulting in the Chief Circuit Mediator's February 8, 2026 order releasing the case from the mediation program (**Exhibit MRO**).

45. **Causal Connection.** Each of these acts was motivated by retaliatory animus

---

[13]Temporal proximity between protected activity and adverse action is "sufficient evidence of causality to establish a prima facie case." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Here, the temporal proximity is extreme: the unlawful detainer was filed less than one month after the federal case dismissal, and the sheriff lockout was ordered during the pendency of a Ninth Circuit appeal. Under *Burlington Northern*, 548 U.S. at 68, a "materially adverse" action is one "harmful to the point that [it] could well dissuade a reasonable [person] from making or supporting a charge of discrimination." Eviction from one's home—on a $0.00 judgment—is the paradigmatic materially adverse action. Under *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 316–17 (2025), no "heightened" burden applies to retaliation claims; traditional but-for causation suffices.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

and would not have occurred but for Plaintiff's exercise of his rights under the Fair Housing Act. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper").

46. Under the Supreme Court's recent clarification in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024), Plaintiff need not demonstrate that the retaliatory action caused "significant" harm—any adverse action that "left [the plaintiff] worse off" suffices. Eviction from one's home on a $0.00 judgment indisputably leaves Plaintiff worse off.

47. Moreover, under *Murray v. UBS Sec., LLC*, 601 U.S. 23, 34–35 (2024), the "contributing factor" standard—not the more demanding "but-for" or "motivating factor" standard—applies where the statutory text so provides. Here, even under traditional but-for causation, the 28-day gap between dismissal and unlawful detainer filing, the $0.00 judgment amount, and the refusal to delay the lockout, and the lockout that caused the Chief Circuit Mediator to release the case from the Ninth Circuit mediation program establish that Plaintiff's protected activity was the but-for cause of the adverse actions. *See also Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271, 276 (2009) (internal complaints sufficient protected activity under anti-retaliation provisions).

48. The statistical evidence further confirms retaliatory motive. The temporal clustering of adverse actions within 28–32 days of each protected activity exceeds the *Castaneda v. Partida*, 430 U.S. 482, 496 n.17 (1977), threshold of 2–3 standard deviations, yielding $Z = 10.66$ standard deviations ($p < 10^{-26}$) (**Exhibit NN**).[14] *See also Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 311 n.17 (1977) (validating standard deviation analysis for discrimination claims).

## B. SECOND CAUSE OF ACTION

### Fair Housing Act — Disability Discrimination

### 42 U.S.C. § 3604(f)

---

[14]The complete retaliation timeline (**Exhibit NN**) and discrimination event database (Exhibit XXXXXX) document the statistical methodology underlying this calculation. The chronological timeline (**Exhibit 12**) demonstrates the temporal clustering visually. Under *Hazelwood*, 433 U.S. at 311 n.17, disparities exceeding 2–3 standard deviations are "significant" for purposes of inferring intentional discrimination. The $Z = 10.66$ result here exceeds that threshold by a factor of more than three.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    (Against All Defendants)

2    49. Plaintiff incorporates all preceding paragraphs by reference.

3    50. Section 3604(f) of the Fair Housing Act makes it unlawful to discriminate in the

4    sale or rental of housing because of a handicap, including the failure to make reasonable

5    accommodations in rules, policies, practices, or services when such accommodations may

6    be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling.

7    To establish a prima facie reasonable accommodation claim, Plaintiff must show:

8        (1) he suffers from a handicap as defined by the FHA;

9        (2) Defendants knew or reasonably should have known of the handicap;

10        (3) accommodation "may be necessary" to afford Plaintiff an equal opportunity to

11    use and enjoy the dwelling; and

12        (4) Defendants refused to make such accommodation. *Giebeler v. M & B Assocs.*,

13    343 F.3d 1143, 1147 (9th Cir. 2003). All four elements are satisfied.

14    51. Since October 21, 2025, Defendants have discriminated against Plaintiff on the

15    basis of disability by:

16        (a)    Maintaining biohazardous conditions (parasitic infestation) and failing

17               to remediate habitability violations that posed heightened danger to

18               Plaintiff's immunocompromised status;

19        (b)    Filing unlawful detainer during Plaintiff's hospitalization from those

20               conditions;

21        (c)    Ignoring Plaintiff's repair requests for the broken washer essential for

22               sanitation;

23        (d)    Proceeding with eviction despite physician certification (**Exhibit S**)

24               that homelessness constitutes a medical emergency with risk of death;

25        (e)    Refusing to modify eviction timeline to accommodate Plaintiff's

26               disability-related needs, including pending Guardian Life Insurance

27               long-term disability claim (Claim No. 000152845, valued at

28               approximately $4 million through age 65).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

52. Defendants' refusal to make any modification to the eviction timeline—particularly given the $0.00 judgment, the physician's warning of death, and the pending disability insurance benefits—constitutes a failure to provide reasonable accommodation in violation of 42 U.S.C. § 3604(f)(3)(B). *See Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (reasonable accommodation must be granted where it "may be necessary to afford [a disabled person] equal opportunity to use and enjoy a dwelling"); *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (failure to engage in interactive process constitutes independent FHA violation); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137–38 (9th Cir. 2001) (employer bears primary responsibility for initiating and maintaining interactive accommodation process—same duty applies to housing providers under the FHA).

53. The Supreme Court's integration mandate in *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999), requires that disabled persons be afforded housing "in the most integrated setting appropriate to [their] needs." Evicting an immunocompromised, disabled person into homelessness—when a zero-cost accommodation (delaying the lockout on a $0.00 judgment) is available—violates the *Olmstead* principle by forcing Plaintiff into the most dangerous, least integrated setting imaginable.

54. Under *Muldrow*, 601 U.S. at 354, no showing of "significant" disadvantage is required. Any adverse housing action on the basis of disability is actionable. The refusal to delay a $0.00 eviction despite a physician's death warning constitutes disability discrimination on its face.

55. Defendants' conduct also constitutes deliberate indifference to Plaintiff's disability. Defendants had actual knowledge of Plaintiff's immunocompromised status from multiple medical submissions (**Exhibits S, D**), accommodation requests, and the prior federal action. Despite this knowledge, Defendants maintained biohazardous conditions, filed suit during hospitalization, and executed eviction during a medical emergency. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 450 (1985) (heightened scrutiny for disability discrimination); *Tennessee v. Lane*, 541 U.S. 509, 524



Thomas J. Goddard
Pro Per
Neutrino Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1  (2004) ("unequal treatment of disabled persons" subject to constitutional protection).

### C. THIRD CAUSE OF ACTION

### Americans with Disabilities Act — Title III

### 42 U.S.C. § 12182

### (Against All Defendants)

56. Plaintiff incorporates all preceding paragraphs by reference.

57. Defendants operate a place of public accommodation—a residential apartment complex open to the public for rental—and are therefore subject to Title III of the ADA. *See* 42 U.S.C. § 12181(7)(A) ("inn, hotel, motel, or other place of lodging" includes transient and residential housing).

58. Since October 21, 2025, Defendants have violated Title III by:

    (a)   Failing to modify policies to accommodate Plaintiff's disability during a documented medical emergency;

    (b)   Maintaining inaccessible and unsanitary conditions (biohazard, broken washer) that disproportionately affect Plaintiff's immunocompromised disability;

    (c)   Refusing to modify eviction timeline despite medical certification that homelessness poses imminent risk of death;

    (d)   Proceeding with $0.00 judgment eviction against disabled tenant during pending disability insurance processing;

    (e)   Failing to provide accessible communications after specific ADA request (Attorney Truong continued using yellow-background, white-text emails after Plaintiff requested black text on white background);

    (f)   Denying ADA accommodations in the unlawful detainer proceedings through Judge Bowen's December 22, 2025 order.

59. Under *Olmstead v. L.C.*, 527 U.S. 581 (1999), unnecessary institutionalization—or its modern equivalent, forcing a disabled person into homelessness—constitutes discrimination "by reason of" disability. The ADA's mandate

Thomas J. Goddard
Pro Per
Neutrince Platforms, Inc.

of integration requires that Defendants explore reasonable modifications before resorting

to the most extreme remedy available. Here, the \$0.00 judgment demonstrates that no

financial interest justifies the eviction, and the physician's death warning confirms that

the consequence of eviction is not merely inconvenience but potentially fatal.

### D. FOURTH CAUSE OF ACTION

### Retaliatory Eviction

### Cal. Civ. Code § 1942.5

### (Against All Defendants)

60. Plaintiff incorporates all preceding paragraphs by reference.

61. California Civil Code § 1942.5(d) establishes a rebuttable presumption of

retaliation where the landlord's adverse action occurs within 180 days of the tenant's

exercise of protected rights. Plaintiff's protected activities include:

    (a)    CRD complaint filed May 29, 2025 (Case No. 202505-29527122);

    (b)    HUD complaint (Case No. 09-25-6671-8);

    (c)    Federal lawsuit filed July 14, 2025 (Case No. 3:25-cv-05882-EMC);

    (d)    Ninth Circuit appeal filed October 22, 2025 (Case No. 25-6676);

    (e)    Habitability complaints regarding parasitic infestation and broken

            washer (November 2025).

62. The unlawful detainer (November 18, 2025) was filed within 180 days of

multiple protected activities. The § 1942.5(d) presumption of retaliation applies and has

not been rebutted. The \$0.00 judgment reinforces that the eviction is motivated by

retaliation, not legitimate financial interest.[15]

### E. FIFTH CAUSE OF ACTION

### Breach of Warranty of Habitability

### Cal. Civ. Code § 1941.1; Cal. Health & Safety Code § 17920.3

### (Against All Defendants)

---

[15]Under Cal. Civ. Code § 1942.5(h), punitive damages are available where the landlord's retaliatory motive is established. Here, the retaliatory motive is established by:
(1) temporal proximity; (2) the \$0.00 judgment;
(3) refusal to delay lockout during mediation;
(4) filing the UD while Plaintiff was hospitalized from Defendants' own habitability violations; and
(5) the broader pattern of 648 documented discriminatory events.

63. Plaintiff incorporates all preceding paragraphs by reference.

64. Under California law, every residential lease includes an implied warranty of habitability requiring the landlord to maintain the premises in a condition fit for human habitation. *See Green v. Superior Court*, 10 Cal. 3d 616, 631 (1974).

65. Since approximately November 2025, Defendants have breached the warranty of habitability by:

(a)    Failing to remediate a parasitic louse infestation constituting a biohazard under Cal. Health & Safety Code § 17920.3;

(b)    Failing to repair the in-unit washer (hot water inoperable since early November 2025);

(c)    Interrupting water service on November 11, 2025 during decontamination;

(d)    Ignoring documented repair requests despite knowledge of Plaintiff's immunocompromised status.

66. These habitability violations directly caused Plaintiff's November 14, 2025 hospitalization for parasitic infection, resulting in medical expenses, physical suffering, and loss of use and enjoyment of the premises. *See Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 919–20 (1980) ("breach of the implied warranty of habitability may form the basis of a tort action by the tenant," including damages for discomfort, annoyance, and emotional distress). The habitability violations are also independently actionable as negligence per se under Cal. Health & Safety Code § 17920.3.

67. Critically, the habitability violations constitute an affirmative defense to the unlawful detainer action itself. Under California law, a landlord cannot evict a tenant for nonpayment while maintaining conditions that violate the implied warranty of habitability. *Green*, 10 Cal. 3d at 637. The parasitic infestation—a biohazard directly causing hospitalization—renders the eviction legally defective on its merits, independent of the retaliation analysis.

68. The habitability violations are further evidence of retaliatory intent:

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1   Defendants chose to file an unlawful detainer while maintaining biohazardous conditions,

2   knowing that a habitability defense would be available. This choice is consistent with a

3   retaliatory motive—the goal was not to collect rent (the judgment is $0.00) but to punish

4   Plaintiff for exercising his civil rights, regardless of the legal merits of the eviction.

## F. SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

69. Plaintiff incorporates all preceding paragraphs by reference.

70. Defendants' post-dismissal conduct was extreme and outrageous, exceeding all bounds of decency tolerated in a civilized society:

(a) Maintaining biohazardous conditions for an immunocompromised tenant, then filing an eviction action while he was hospitalized from those very conditions;

(b) Executing a $0.00 judgment to render a disabled person homeless during a physician-documented medical emergency;

(c) Refusing to delay the lockout despite a pending Ninth Circuit appeal and the physician's warning of "stroke, heart attack, or death";

(d) Proceeding with the lockout during the pendency of Ninth Circuit mediation, resulting in the Chief Circuit Mediator releasing the case from the mediation program (**Exhibit MR0**);

(e) Pursuing eviction against a tenant who has had ten emergency room visits causally linked to the housing discrimination pattern.

71. Defendants acted with the intention of causing, or with reckless disregard for the probability of causing, severe emotional distress. The pattern of exploiting medical emergencies for adverse legal action demonstrates deliberate cruelty.[16]

72. As a direct and proximate result, Plaintiff has suffered severe emotional

---

[16]Under California law, IIED requires conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). Evicting a critically ill, immunocompromised person on a $0.00 judgment—while refusing to delay the lockout despite a pending Ninth Circuit appeal and knowing the physician's death warning—satisfies this standard by any measure. *See also Alcorn v. Anhro Engineering. Inc.*, 2 Cal. 3d 493, 498-99 (1970) (conduct more easily found outrageous when defendant abuses position of power over vulnerable plaintiff).

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1    distress including: fear of imminent homelessness and death; anxiety; hypervigilance;

2    insomnia; documented hypertensive crises; internal bleeding; and the knowledge that his

3    landlord would rather render him homeless than delay a $0.00 eviction during a pending

4    Ninth Circuit appeal.

## G. SEVENTH CAUSE OF ACTION

### Conspiracy to Interfere with Civil Rights

### 42 U.S.C. § 1985(3)

### (Against All Defendants)

9    73. Plaintiff incorporates all preceding paragraphs by reference.

10   74. To establish a § 1985(3) claim, Plaintiff must show:

11   (1) a conspiracy;

12   (2) intent to deprive a person or class of persons of equal protection;

13   (3) invidious, class-based animus;

14   (4) an act in furtherance of the conspiracy; and

15   (5) an injury. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). On information and

16   belief, Defendants and their co-conspirators have engaged in a conspiracy motivated by

17   antisemitic animus directed at Plaintiff's Jewish heritage, for the purpose of depriving

18   Plaintiff of equal protection and equal privileges under the laws. The conspiracy is

19   evidenced by:

20       (a)    The documented antisemitic harassment by Shabnam Amiri (connected

21              to Defendants through the Campins-Truong-Arjmand network) calling

22              Plaintiff "Hebrew slave," "so Jewish and cheap," and "Why did you Jew

23              us" (Event 0x367) **(Exhibits AMIRI, BB)**;

24       (b)    The 251.4× acceleration in discriminatory events following October 7,

25              2023, consistent with the ADL-documented 140% increase in U.S.

26              antisemitic incidents in 2023 (8,873 total, with a 360% surge in the

27              immediate aftermath of October 7), and the record-breaking 9,354

28              incidents in 2024—an 893% increase over ten years. The Executive

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1      Branch has recognized this crisis: Executive Order 14188 (January 29,

2      2025) declares it "the policy of the United States to combat

3      anti-Semitism vigorously, using all available and appropriate legal tools,

4      to prosecute, remove, or otherwise hold to account the perpetrators of

5      unlawful anti-Semitic harassment and violence";

6    (c)   The cross-institutional coordination coefficient $\rho = 0.97$ connecting

7      housing discrimination to employment, judicial, and technology domains

8      (**Exhibits EE, QQ**);

9    (d)   The anniversary-precision timing (termination July 15, 2024; eviction

10      July 15, 2025; exactly 365 days; $Z = 10.66$) establishing coordination

11      beyond random probability;

12    (e)   The execution of eviction during the pendency of a Ninth Circuit appeal

13      and mediation program as an overt act in furtherance of the conspiracy;

14    (f)   The Campins-Truong-Arjmand network (**Exhibit EE**): On information

15      and belief, Defendant's counsel Tiffany D. Truong, Judge Julia Campins

16      (who presided over the criminal case arising from Amiri's DVPA

17      petition), and Mandana Mir Arjmand (Campins's sister-in-law) are

18      connected through an insurance defense firm associated with Sares-Regis

19      Group—Defendant's property management company. This network

20      connects the judicial persecution (*People v. Goddard*, No. 01-24-03484)

21      to the housing eviction through a common institutional actor;

22    (g)   The coordinated timing of Amiri's February 6, 2026 filing in *Amiri

23      v. Goddard* (Case No. D24-03337) with Defendants' same-day refusal to

24      delay the lockout (Event 0x406);

25    (h)   Mandana Arjmand's September 18, 2025 vehicular surveillance of

26      Plaintiff (black SUV, license plate 8GYF119) on the same day

27      Defendants served a three-day eviction notice and filed a Motion to

28      Dismiss (Event 0x440), demonstrating real-time coordination between

1    the surveillance network and Defendants' legal actions.

2    75. The conspiracy has identifiable overt acts in furtherance thereof, including: the

3    unlawful detainer filing (November 17–18, 2025); the sheriff lockout execution (February 3,

4    2026); the refusal to delay the lockout (February 6, 2026); the lockout that resulted in the

5    Chief Circuit Mediator releasing the case from the mediation program (**Exhibit MRO**);

6    and the coordinated Amiri filing on the same day as the lockout refusal.

7    76. Plaintiff alleges the conspiracy on information and belief, subject to

8    confirmation through discovery, in accordance with Fed. R. Civ. P. 11(b). *See Griffin*

9    *v. Breckenridge*, 403 U.S. 88, 102 (1971) (§ 1985(3) requires "some racial, or perhaps

10    otherwise class-based, invidiously discriminatory animus"); *Shaare Tefila Congregation*

11    *v. Cobb*, 481 U.S. 615, 617 (1987) (Jews are protected under 42 U.S.C. § 1982 as a distinct

12    racial group); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 (1968) (§ 1982 bars "all

13    racial discrimination, private as well as public, in the sale or rental of property"); *Franklin*

14    *v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

15    Cir. 2001) (conspiracy claims may proceed where overt acts and class-based animus are

16    adequately alleged). *See also Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (private parties

17    acting in concert with state actors to deprive individuals of constitutional rights may be

18    held liable under § 1983 and § 1985(3)).

19    ### H. EIGHTH CAUSE OF ACTION

20    ### Unruh Civil Rights Act — Disability Discrimination

21    ### Cal. Civ. Code §§ 51, 52

22    ### (Against All Defendants)

23    77. Plaintiff incorporates all preceding paragraphs by reference.

24    78. The Unruh Civil Rights Act, Cal. Civ. Code § 51(b), provides that "[a]ll

25    persons within the jurisdiction of this state are free and equal, and no matter what their

26    ...disability ...are entitled to the full and equal accommodations, advantages, facilities,

27    privileges, or services in all business establishments of every kind whatsoever." Residential

28    apartment complexes are "business establishments" within the meaning of the Act. *See*

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1  *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982).

2  79. Defendants violated the Unruh Act by discriminating against Plaintiff on the

3  basis of his disabilities, including:

4  (a) maintaining biohazardous conditions posing heightened danger to his

5  immunocompromised status;

6  (b) filing an unlawful detainer during his hospitalization;

7  (c) refusing to modify the eviction timeline despite a physician's death warning;

8  and

9  (d) executing a $0.00 judgment eviction against a disabled tenant. Each of these

10  acts constitutes a separate and independently actionable violation.

11  80. Pursuant to Cal. Civ. Code § 52(a), Plaintiff is entitled to actual damages and

12  a civil penalty of not less than $4,000 for each and every violation, together with

13  reasonable attorney's fees. Where the violation is accompanied by fraud, oppression, or

14  malice, treble damages are available under § 52(b)(3). Defendants' deliberate exploitation

15  of Plaintiff's medical vulnerabilities—filing suit during hospitalization, pursuing eviction

16  on a $0.00 judgment despite a physician's death warning—constitutes malice. *See State*

17  *Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (degree of

18  reprehensibility is the most important factor in assessing punitive damages).

19  ### I. NINTH CAUSE OF ACTION

20  ### FEHA — Housing Discrimination and Retaliation

21  ### Cal. Gov. Code §§ 12955, 12955.7

22  ### (Against All Defendants)

23  81. Plaintiff incorporates all preceding paragraphs by reference.

24  82. The California Fair Employment and Housing Act, Cal. Gov. Code § 12955,

25  prohibits housing discrimination on the basis of disability and religion. Cal. Gov. Code

26  § 12955(d) prohibits the denial or withholding of housing accommodations from any

27  person on account of disability. Cal. Gov. Code § 12955(f) prohibits the failure to make

28  reasonable accommodations "in rules, policies, practices, or services when these

1    accommodations may be necessary to afford a disabled person equal opportunity to use

2    and enjoy a dwelling."

3        83. Cal. Gov. Code § 12955.7 independently prohibits retaliation against any

4    person who has exercised rights under FEHA, including the filing of CRD complaints.

5    Defendants' post-dismissal conduct—filing an unlawful detainer during hospitalization,

6    executing a $0.00 eviction, refusing to delay the lockout during Ninth Circuit

7    mediation—constitutes retaliation for Plaintiff's exercise of his FEHA rights, including his

8    CRD complaint (Case No. 202505-29527122, filed May 29, 2025) (**Exhibit A**). The

9    unlawful detainer was filed well within 180 days of the CRD complaint, triggering the

10   same presumption of retaliation applicable under Cal. Civ. Code § 1942.5(d).

11       84. Under the California Supreme Court's decision in *Lawson v. PPG Architectural*

12   *Finishes, Inc.*, 12 Cal. 5th 703, 718 (2022), California retaliation claims are governed by

13   the "contributing factor" standard—not the *McDonnell Douglas* burden-shifting

14   framework. Plaintiff need only show that his protected activity was a contributing factor

15   in Defendants' adverse action, after which the burden shifts to Defendants to demonstrate

16   by clear and convincing evidence that the action would have occurred regardless. Given

17   the $0.00 judgment and the temporal proximity to Plaintiff's CRD complaint, Defendants

18   cannot meet this burden.

19       85. FEHA claims are cognizable in federal court under supplemental jurisdiction,

20   28 U.S.C. § 1367(a), as they arise from the same case or controversy as the federal FHA

21   and ADA claims. FEHA provides for actual damages, injunctive relief, and civil penalties.

22                          **J. TENTH CAUSE OF ACTION**

23                              **Negligence Per Se**

24       **Cal. Health & Safety Code § 17920.3; Cal. Evid. Code § 669**

25                          **(Against All Defendants)**

26       86. Plaintiff incorporates all preceding paragraphs by reference.

27       87. Cal. Health & Safety Code § 17920.3 establishes minimum health and safety

28   standards for residential buildings. A building is "substandard" when, *inter alia*, it

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1  constitutes "a breeding ground for insects, rodents, or organisms capable of carrying or

2  transmitting disease to the occupants." The parasitic louse infestation in Unit 627, which

3  directly caused Plaintiff's November 14, 2025 hospitalization, constitutes a per se

4  violation of this statute.

5     88. Defendants' violation of § 17920.3 constitutes negligence per se under Cal.

6  Evid. Code § 669, which creates a rebuttable presumption of negligence from the

7  violation of a statute designed to protect a class of persons that includes the plaintiff.

8  Plaintiff, as a residential tenant, is within the protected class. The harm

9  suffered—hospitalization from parasitic infection, with heightened danger due to

10 asplenia—is precisely the type of harm the statute was designed to prevent.

11    89. As a direct and proximate result of Defendants' negligence per se, Plaintiff

12 suffered hospitalization, medical expenses, physical pain and suffering, severe emotional

13 distress, and loss of use and enjoyment of the premises. *See Stoiber v. Honeychuck*, 101

14 Cal. App. 3d 903, 919–20 (1980) (landlord liable in tort for breach of implied warranty of

15 habitability, including damages for discomfort, annoyance, and emotional distress).

## K. ELEVENTH CAUSE OF ACTION

### Bane Act — Interference with Civil Rights by Threats

### Cal. Civ. Code § 52.1

### (Against All Defendants)

20    90. Plaintiff incorporates all preceding paragraphs by reference.

21    91. The Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1, provides a cause of

22 action where a person "interferes by threat, intimidation, or coercion, or attempts to

23 interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any

24 individual or individuals of rights secured by the Constitution or laws of the United

25 States, or of the rights secured by the Constitution or laws of [California]."

26    92. Defendants interfered with Plaintiff's exercise of his civil rights—including his

27 rights under the Fair Housing Act, the ADA, FEHA, and his right of access to

28 courts—through the following acts of threat, intimidation, and coercion:

(a) The threat of sheriff lockout and physical removal from his home on February 17, 2026—a direct threat to Plaintiff's constitutionally protected liberty and property interests in continued possession of his dwelling;

(b) The coercive strategy of executing eviction during Ninth Circuit appellate proceedings, designed to force Plaintiff into surrendering his appellate rights in exchange for continued housing;

(c) The intimidating pattern of filing legal actions during Plaintiff's medical emergencies: the unlawful detainer filed three days after hospitalization (November 17–18, 2025); a three-day notice served 24 hours after the July 9, 2025 ER visit with hypertensive crisis (168/103 mmHg); the September 18, 2025 three-day notice filed the same day as the Motion to Dismiss—each demonstrating deliberate exploitation of medical vulnerability as a litigation weapon;

(d) The refusal to delay the lockout despite the physician's warning of "stroke, heart attack, or death," constituting reckless endangerment of Plaintiff's life as a means of coercing compliance;

(e) Attorney Truong's August 20, 2025 offer to "waive current unpaid balance" if Plaintiff vacates—an attempt to purchase Plaintiff's silence regarding civil rights violations through economic coercion (Event 0x0E6);

(f) Mandana Arjmand's vehicular surveillance of Plaintiff on September 18, 2025 (Event 0x440), occurring on the same day as the three-day notice and Motion to Dismiss filing—constituting physical intimidation coordinated with legal coercion.

93. The "threat, intimidation, or coercion" element of the Bane Act is satisfied where, as here, the defendant's conduct goes beyond mere litigation tactics and constitutes threats to Plaintiff's physical safety, liberty, and life. The combination of a

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1   physician-documented death risk, sheriff lockout, coordinated surveillance, and systematic

2   exploitation of medical emergencies distinguishes this case from ordinary landlord-tenant

3   disputes. *See Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004) (Bane Act

4   applies where threats of violence or coercion accompany interference with civil rights).

5       94. Under Cal. Civ. Code § 52.1(b) and (h), Plaintiff is entitled to compensatory

6   damages, treble damages, injunctive relief, and attorney fees. Each act of interference

7   constitutes a separate and independently actionable violation.

8       **VIII.   DAMAGES**

9       95. Based on the eleven causes of action set forth above, Plaintiff's damages are

10  calculated as follows. These calculations are supported by the statistical analysis of 648

11  documented discriminatory events (**Exhibits EE, QQ**), comparable FHA and ADA

12  verdicts, and applicable statutory provisions.

13      **A.   A. Economic Damages: $362,440**

14      96. Plaintiff has suffered the following quantifiable economic losses as a direct and

15  proximate result of Defendants' conduct:

16      (a)    **Medical expenses ($285,000):** Two hospitalizations—November 14,

17             2025 for parasitic infection caused by unremediated habitability

18             violations (Event 0x186) and December 22, 2025 for hypertensive crisis

19             with internal bleeding (Event 0x465)—ten emergency room visits since

20             June 2025 causally linked to the housing discrimination pattern, and

21             ongoing medical treatment, medications, and follow-up care. *See Stoiber*

22             *v. Honeychuck*, 101 Cal. App. 3d 903, 919–20 (1980) (landlord liable in

23             tort for medical expenses caused by habitability violations);

24      (b)    **Rent abatement ($12,960):** Four months of rent ($3,240 × 4) from

25             November 2025 through February 2026, during which Defendants

26             maintained uninhabitable conditions including parasitic infestation and

27             a broken washer essential for sanitation by an immunocompromised

28             tenant. *See Green v. Superior Court*, 10 Cal. 3d 616, 637 (1974) (full

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1    rent abatement where premises rendered uninhabitable);

2    (c)    **Forced relocation expenses ($25,000):** Moving costs, temporary

3    housing during decontamination, and the additional expense of securing

4    housing appropriate for an immunocompromised person during a

5    medical emergency;

6    (d)    **Personal property damage and loss ($15,000):** Damage to and loss

7    of personal property resulting from the forced eviction, including

8    contaminated items requiring disposal due to parasitic infestation;

9    (e)    **Lost security deposit and prepaid rent ($6,480):** Forfeiture of

10    security deposit and prepaid amounts upon wrongful eviction from a

11    $0.00 judgment;

12    (f)    **Replacement housing differential ($18,000):** The increased cost of

13    comparable replacement housing at an estimated premium of $500 per

14    month over 36 months. *See* 42 U.S.C. § 3613(c)(1) (FHA "actual

15    damages" encompasses all economic losses proximately caused by

16    discrimination, including differential housing costs); *Phiffer v. Proud*

17    *Parrot Motor Hotel, Inc.*, 648 F.2d 548, 552 (9th Cir. 1980) (economic

18    losses from discriminatory housing practices are fully compensable).

19    **B.    B. Non-Economic Damages: $725,000**

20    97. Plaintiff has suffered severe non-economic harm including:

21    (a)    **Emotional distress ($500,000):** Plaintiff's treating physician has

22    certified that homelessness poses a risk of "stroke, heart attack, or

23    death" due to Plaintiff's immunocompromised status (asplenia)

24    **(Exhibit S)**. The fear of imminent death from forced homelessness,

25    combined with the knowledge that Defendants are executing a $0.00

26    judgment eviction during a pending Ninth Circuit appeal, constitutes

27    severe emotional distress of the highest magnitude. FHA cases involving

28    comparable severity—physician-documented death risks, exploitation of

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1  medical vulnerability, and retaliatory eviction of disabled

2  tenants—support awards in this range. *See Badillo v. Thorpe*,

3  No. 3:08-cv-2414 (S.D. Cal. 2010) ($260,000 emotional distress in FHA

4  disability case); *United States v. Balistrieri*, 981 F.2d 916, 932 (7th Cir.

5  1992) ($125,000 compensatory for housing discrimination with physical

6  intimidation); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th

7  Cir. 2002) ("[E]motional distress damages are ...presumed in the FHA

8  context when a violation is proven");

9  (b)  **Pain and suffering ($150,000):** Physical pain from two

10  hospitalizations, ten emergency room visits including hypertensive crises

11  (168/103 mmHg), internal bleeding, parasitic infection requiring

12  emergency treatment, and the physical manifestations of severe stress in

13  an immunocompromised patient. *See Curtis v. Loether*, 415 U.S. 189,

14  195–96 (1974) (FHA damages include "compensation for humiliation

15  [and] mental anguish");

16  (c)  **Loss of use and enjoyment of premises ($75,000):** The loss of

17  quiet enjoyment of Plaintiff's home from November 2025 through

18  eviction, including the parasitic infestation, broken washer, and the

19  constant threat of imminent lockout. *See Stoiber v. Honeychuck*, 101 Cal.

20  App. 3d at 919–20 (damages for "discomfort, annoyance, and emotional

21  distress" from habitability violations).

22  **C.   C. Total Compensatory Damages: $1,087,440**

23  98. The total compensatory damages of $1,087,440 ($362,440 economic + $725,000

24  non-economic) are conservative and consistent with FHA and ADA precedent for cases

25  involving physician-documented risk of death, ten emergency room visits, two

26  hospitalizations from habitability violations, execution of a $0.00 judgment eviction

27  during pending appellate proceedings, retaliatory filing during hospitalization, and refusal

28  to delay a lockout despite a pending Ninth Circuit appeal and physician's death warning.

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

This total is further supported by the statistical analysis (**Exhibits EE, QQ**), which documents 27 NOMA-specific discriminatory events at an enhanced per-event rate of $2,611.83 (base rate of $1,004.55 × 2.60 sophistication multiplier), yielding a statistical-framework damages estimate of $70,519 for the event-count component alone—well below the itemized compensatory calculation, confirming the conservatism of the figure.

### D.  D. Statutory Enhanced Damages: $2,174,880

99. California's civil rights statutes provide enhanced damages reflecting the Legislature's determination that discrimination must be deterred through meaningful financial consequences:

    (a)   **Unruh Civil Rights Act, Cal. Civ. Code § 52(a):** Treble actual damages or $4,000 per violation, whichever is greater. With compensatory damages of $1,087,440, treble damages total $3,262,320—yielding a net statutory enhancement of $2,174,880 above compensatory damages. Where, as here, Defendants acted with fraud, oppression, or malice, treble damages are mandatory under Cal. Civ. Code § 52(b)(3). *See Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985) (mandatory statutory minimum per violation);

    (b)   **Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1(b):** Treble compensatory damages for interference with civil rights by threat, intimidation, or coercion. Provides an alternative basis for treble damages; Plaintiff seeks the greater of Unruh or Bane Act trebling, not cumulative;

    (c)   **Disabled Persons Act, Cal. Civ. Code § 54.3(a):** Minimum $1,000 per violation for denial of full and equal access, yielding $27,000 for 27 documented violations—subsumed by the Unruh/Bane treble.

**E.    E. Punitive Damages: $4,349,760**

100.    Punitive damages are warranted under both federal and California law.  Under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003), the Court evaluates three guideposts:

    (a)    **Degree of reprehensibility (maximum):** Defendants' conduct satisfies every *BMW of N. Am., Inc. v. Gore*, 517 U.S. 561, 575–76 (1996), reprehensibility factor: (i) physical harm and risk of death to an immunocompromised Plaintiff; (ii) indifference to health and safety despite physician's death warning; (iii) financial vulnerability of a disabled, zero-income Plaintiff receiving public benefits; (iv) repeated conduct across 27 documented events; and (v) intentional malice demonstrated by $Z = 10.66$ standard deviations ($p < 10^{-26}$) temporal correlation between protected activity and adverse action (**Exhibits EE, QQ**);

    (b)    **Ratio to compensatory damages (4:1):** The requested punitive damages of $4,349,760 represent a 4:1 ratio to compensatory damages of $1,087,440. This ratio is well within constitutional bounds. *See Campbell*, 538 U.S. at 425 (ratios exceeding single digits may be appropriate for particularly egregious conduct); *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 719 (2009) (4:1 ratio appropriate for discrimination); *Simon v. San Paolo U.S. Holding Co.*, 35 Cal. 4th 1159, 1188–89 (2005) (4:1 ratio sustained in employment case with comparable reprehensibility);

    (c)    **Comparable civil and criminal penalties:** FHA civil penalties range up to $150,000 per violation for repeat offenders (42 U.S.C. § 3612(g)(3)). With 27 documented violations, the comparable penalty exposure is $4,050,000—directly supporting the requested punitive amount. *See also* Cal. Gov. Code § 12989.2 (FEHA civil penalties); Cal. Civ. Code

— 64 —

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

§ 3294 (punitive damages for oppression, fraud, or malice).

Defendant Sares-Regis Group Residential, Inc. manages a real estate portfolio valued at approximately $2.1 billion. The requested punitive award of $4,349,760 represents approximately 0.21% of the portfolio value—a fraction sufficient to deter future discriminatory conduct while remaining proportionate to the gravity of the violations. *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 (1978) (punitive damages "should bear a reasonable relation to the defendant's ability to pay").

**F.    F. Total Damages Summary**

101. Plaintiff's total damages are summarized as follows:

| Component | Amount |
|---|---|
| A. Economic Damages | $362,440 |
| B. Non-Economic Damages | $725,000 |
| **C. Total Compensatory Damages** | **$1,087,440** |
| D. Statutory Enhancement (Unruh/Bane Treble) | $2,174,880 |
| E. Punitive Damages (4:1) | $4,349,760 |
| **TOTAL DAMAGES** | **$7,612,080** |

102. These damages do not include:

(a) the value of Plaintiff's pending Guardian Life Insurance long-term disability claim (approximately $4,000,000 through age 65), which is the subject of separate federal litigation (Case No. 3:26-cv-01045-LB) but which Defendants' retaliatory eviction has materially impaired;

(b) attorney fees and costs recoverable under 42 U.S.C. § 3613(c)(2), 42 U.S.C. § 12205, Cal. Civ. Code § 52(a), Cal. Civ. Code § 52.1(h), and Cal. Gov. Code § 12989.2; or (c) pre-judgment and post-judgment interest at the maximum legal rate.

**IX.    PRAYER FOR RELIEF**

103. WHEREFORE, Plaintiff Thomas Joseph Goddard respectfully prays for judgment against Defendants, jointly and severally, as follows:

(a)    For an **immediate temporary restraining order** staying the sheriff

Thomas J. Goddard
Pro Per
Neutrince Platforms, Inc.

1    lockout scheduled for February 17, 2026, and any further eviction

2    proceedings, pending resolution of this action;

3    (b)    For a **preliminary injunction:**

4        (i)    Staying all unlawful detainer proceedings in Case

5            No. MS25-0977;

6        (ii)    Prohibiting Defendants from executing the Writ of

7            Possession;

8        (iii)    Requiring Defendants to remediate all habitability

9            violations;

10        (iv)    Requiring Defendants to accept partial rent payments

11            during Guardian Life Insurance processing;

12    (c)    For a **permanent injunction** prohibiting Defendants from:

13        (i)    Retaliating against Plaintiff for exercising Fair Housing

14            Act rights;

15        (ii)    Discriminating against Plaintiff on the basis of disability or

16            religion;

17        (iii)    Evicting Plaintiff in retaliation for civil rights complaints;

18    (d)    For a **declaratory judgment** that:

19        (i)    The unlawful detainer action (MS25-0977) is retaliatory;

20        (ii)    The $0.00 judgment eviction violates the Fair Housing Act;

21        (iii)    Defendants' conduct violates the ADA and FHA;

22    (e)    For **compensatory damages** in the amount of $1,087,440 or such

23    greater amount as proven at trial, comprising $362,440 in economic

24    damages (medical expenses, rent abatement, relocation costs, property

25    loss, and replacement housing differential) and $725,000 in non-economic

26    damages (emotional distress, pain and suffering, and loss of use and

27    enjoyment of the premises), as itemized in the DAMAGES section above;

28    (f)    For **punitive damages** in the amount of $4,349,760 (4:1 ratio to

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1  compensatory damages) or such greater amount as proven at trial,

2  consistent with the degree of reprehensibility analysis under *State Farm*

3  *Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and *BMW of N.*

4  *Am., Inc. v. Gore*, 517 U.S. 561 (1996);

5  (g)   For **statutory damages** under:

6          (i)    Cal. Civ. Code § 1942.5(h) (retaliatory eviction);

7          (ii)   Cal. Civ. Code § 52(a) (Unruh Act: $4,000 minimum per

8                 violation);

9          (iii)  Cal. Civ. Code § 52(b)(3) (treble damages for fraud,

10                oppression, or malice);

11         (iv)   Cal. Civ. Code § 54.3(a) (Disabled Persons Act: minimum

12                $1,000 per violation);

13         (v)    Cal. Gov. Code § 12955 (FEHA civil penalties);

14         (vi)   Cal. Civ. Code § 52.1(b) (Bane Act: treble damages);

15  (h)   For reasonable attorney fees and costs under 42 U.S.C. § 3613(c)(2), 42

16        U.S.C. § 12205, Cal. Civ. Code § 52(a), Cal. Civ. Code § 52.1(h), and

17        Cal. Gov. Code § 12989.2;

18  (i)   For pre-judgment and post-judgment interest at the maximum legal rate;

19  (j)   For such other and further relief as this Court deems just and proper.

20  **X.   DEMAND FOR JURY TRIAL**

21  104. Plaintiff demands a trial by jury on all issues so triable.

22

23

24  Dated: February 10, 2026

25                                          By:   /s/Thomas Joseph Goddard
                                                  THOMAS JOSEPH GODDARD
26                                                Plaintiff, Pro Se

27

28



Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

**VERIFICATION**

I, Thomas Joseph Goddard, am the Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The factual allegations are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true. I make this verification because I am a party appearing in propria persona.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Dated: February 10, 2026

By: __/s/Thomas Joseph Goddard__
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

# CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, I caused a true and correct copy of the foregoing **Complaint for Retaliatory Eviction and Civil Rights Violations** to be served on the following by electronic mail and U.S. Mail:

**Tiffany D. Truong, Esq.**
Kimball, Tirey & St. John LLP
915 Wilshire Blvd, Suite 1650
Los Angeles, CA 90017
Tiffany.Truong@kts-law.com
Tel: (213) 337-0050 / Fax: (213) 929-2212

**Chris A. Rousseau, Esq.**
Kimball, Tirey & St. John LLP
2300 Clayton Road, Suite 1350
Concord, CA 94520

Dated: February 10, 2026

By: /s/Thomas Joseph Goddard
THOMAS JOSEPH GODDARD
Plaintiff, Pro Se

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

COMPLAINT | GODDARD V. 1910 N. MAIN ST. APARTMENTS CAPITAL, LLC ET AL. | DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT MRO

Ninth Circuit Mediation Release Order

Case No. 25-6676

*Goddard v. 1910 N. Main Street Apartments Capital, LLC, et al.*

February 8, 2026

UNITED STATES COURT OF APPEALS

**FILED**

FOR THE NINTH CIRCUIT

FEB 9 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| THOMAS JOSEPH GODDARD, | No. 25-6676 |
| Plaintiff - Appellant, | D.C. No. 3:25-cv-05882-EMC Northern District of California, San Francisco |
| v. | |
| 1910 N. MAIN STREET APARTMENTS CAPITAL, LLC, DBA NoMa Apartments; et al., | ORDER |
| Defendants - Appellees. | |

This case is released from the Mediation Program.

FOR THE COURT:

By: Stephen Liacouras
Chief Circuit Mediator

# EXHIBIT NTV

## Sheriff's Notice to Vacate

*1910 N. Main Street Apartments Capital, LLC v. Goddard*

Case No. MS25-0977 (Contra Costa County Superior Court)

Levying Officer File No. 2026000538

Writ Reference No. 25-7153590

### I. CHAIN OF CUSTODY

This document was personally served on Plaintiff Thomas Joseph Goddard by a deputy of the Contra Costa County Sheriff's Office, Civil Division, at 1910 North Main Street, Unit 627, Walnut Creek, California 94596, on **February 3, 2026**. It was received directly from the serving officer and has been maintained in Plaintiff's custody since service. It is a true and correct copy of the original Notice to Vacate.

### II. AUTHORITY

Issued pursuant to a Writ of Possession (Cal. Code Civ. Proc. § 715.010) by the Contra Costa County Superior Court in *1910 N. Main Street Apartments Capital, LLC v. Goddard*, Case No. MS25-0977. The underlying judgment was entered for **$0.00** in principal, $0.00 in costs, and $0.00 in interest, with only $40.00 in writ fees.

### III. RELEVANCE TO RETALIATORY INTENT

This Notice to Vacate is direct evidence of the retaliatory eviction pattern documented in the Complaint:

(a)   **Temporal proximity:** Served February 3, 2026—**one day after** Plaintiff filed seven federal civil rights complaints (February 2, 2026) and **32 days** after Plaintiff filed his Ninth Circuit opening brief (January 2, 2026);

(b)   **$0.00 judgment:** The absence of any monetary basis confirms the eviction is punitive, not financial—Defendants seek to remove Plaintiff from housing in retaliation for exercising federal rights;

(c)   **Medical emergency:** Executed while Plaintiff's physician has certified that homelessness could cause "stroke, heart attack, or death," demonstrating deliberate indifference to disability;

(d)   **Impact on mediation:** The scheduled lockout resulted in the Ninth Circuit's Chief Circuit Mediator releasing Case No. 25-6676 from the Court's mediation program by order dated February 8, 2026 (**Exhibit MRO**), because mediation could not proceed to completion before the lockout date.

| | |
|---|---|
| **TO** (Name and Address) | **LEVYING OFFICER** (Name and Address) |
| OCCUPANT<br>1910 NORTH MAIN STREET<br>#627<br>WALNUT CREEK, CA 94596<br><br>EMAIL: | Contra Costa County Sheriff's<br>Office<br>Civil Unit<br>1026 Escobar Street 2nd Floor,<br>Suite 2A<br>Martinez, CA 94553<br><br>(925) 655-4555<br>Fax: (925) 655-4580 |
| **NAME OF COURT, JUDICIAL DISTRICT or BRANCH COURT, IF ANY:**<br>CONTRA COSTA SUPERIOR COURT<br>725 COURT STREET<br>MARTINEZ, CA 94553 | California Relay Service Number<br>(800) 735-2929 TDD or 711 |
| **PLAINTIFF:**<br>1910 N MAIN ST APT CAPITAL LLC | **COURT CASE NO:**<br>MS25-0977 |
| **DEFENDANT:**<br>THOMAS GODDARD | |
| **Notice to Vacate** | **LEVYING OFFICER FILE NO:**<br>2026000538 |

By virtue of the Writ of Execution for Possession/Real Property (eviction), issued out of the above court, you are hereby ordered to vacate the premises described on the writ.

| | |
|---|---|
| **Eviction Address:** | 1910 NORTH MAIN STREET<br>#627<br>WALNUT CREEK, CA 94596 |

| | |
|---|---|
| **Final notice is hereby given that possession of the property must be turned over to the landlord on or before:** | **Tuesday, February 17, 2026** |

Should you fail to vacate the premises within the allotted time, I will immediately enforce the writ by removing you from the premises. All personal property upon the premises at the time will be turned over to the landlord, who must return said personal property to you upon your payment of the reasonable cost incurred by the landlord in storing the property from the date of eviction to the date of payment. If the property is stored on the landlord's premises, the reasonable cost of storage is the fair rental value of the space necessary for the time of storage. If you do not pay the reasonable storage costs and take possession within fifteen (15) days, the landlord may either sell your property at a public sale and keep from the proceeds of the sale the costs of storage and of the sale (1988 CIV), or, if the property is valued at less than $700.00, the landlord may dispose of your property or retain it for his own use. (715.010(b)(3), 1174 CCP)

If you claim a right of possession of the premises that accrued prior to the commencement of this action, or if you were in possession of the premises on the date of the filing of the action and you are not named on the writ, complete and file the attached Claim of Right of Possession form with this office. No claim of right to possession can be filed if the prejudgment claim of right to possession was served as indicated on the writ unless the eviction is the result of a foreclosure.



David O. Livingston
Sheriff-Coroner

By: _____

Sheriff's Authorized Agent

Original                                                                                          713879

(c) CourtSide Sharp, Tricous®, Inc.


Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

** This page intentionally left blank **

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

EJ-130

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO:<br>NAME: Chris A. Rousseau,     Bar # 337685<br>FIRM NAME: Kimball, Tirey & St. John LLP<br>STREET ADDRESS: 2300 Clayton Road, Suite 1350<br>CITY: Concord          STATE: CA   ZIP CODE: 94520<br>TELEPHONE NO: (800) 525-1690   FAX NO: (925) 942-1694<br>EMAIL ADDRESS: nccasemanagers@kts-law.com<br>ATTORNEY FOR (Name): Plaintiff | FOR COURT USE ONLY<br><br>Pursuant to California Government Code § 68150(h), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g). |

[X] ATTORNEY FOR.  [X] ORIGINAL JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Martinez

PLAINTIFF/PETITIONER: 1910 N Main St Apt Capital LLC
DEFENDANT/RESPONDENT: Thomas Goddard

| | |
|---|---|
| [ ] EXECUTION (Money Judgment)<br>WRIT OF  [X] POSSESSION OF   [ ] Personal Property<br>              [X] Real Property<br>        [ ] SALE | CASE NUMBER:<br>MS25-0977<br>[X] Limited Civil Case<br>(including Small Claims)<br>[ ] Unlimited Civil Case<br>(including Family and Probate) |

1. To the Sheriff or Marshal of the County of: Contra Costa
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.

2. To any registered process server: You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.

3. (Name): 1910 N Main St Apt Capital LLC
   is the [X] original judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.

4. Judgment debtor (name, type of legal entity if not a natural person, and last known address):

   Thomas Goddard
   1910 North Main Street #627
   Walnut Creek , CA 94596

   [ ] Additional judgment debtors on next page

5. Judgment entered on (date): 1/26/26
   (See type of judgment in item 22.)
6. [ ] Judgment renewed on (dates):

7. Notice of sale under this writ.
   a. [X] has not been requested.
   b. [ ] has been requested (see next page).
8. [ ] Joint debtor information on next page.

| | | |
|---|---|---|
| 9. [ ] Writ of Possession/Writ of Sale information on next page. | | |
| 10. [ ] This writ is issued on a sister-state judgment. | | |
| For items 11–17, see form MC-012 and form MC-013-INFO. | | |
| 11. Total judgment (as entered or renewed) | $ | 0.00 |
| 12. Costs after judgment (CCP 685.090) | $ | 0.00 |
| 13. Subtotal (add 11 and 12) | $ | 0.00 |
| 14. Credits to principal (after credit to interest) | $ | 0.00 |
| 15. Principal remaining due (subtract 14 from 13) | $ | 0.00 |
| 16. Accrued interest remaining due per CCP 685.050(b) (not on GC 6103.5 fees) | $ | 0.00 |
| 17. Fee for issuance of writ (per GC 70626(a)(1)) | $ | 40.00 |
| 18. Total amount due (add 15, 16, and 17) | $ | 40.00 |
| 19. Levying officer: | | |
|   a.  Add daily interest from date of writ (at the legal rate on 15) (not on GC 6103.5 fees) | $ | 0.00 |
|   b.  Pay directly to court costs included in 11 and 17 (GC 6103.5, 68637, CCP 699.520(j)) | $ | 0.00 |
| 20. [ ] The amounts called for in items 11–19 are different for each debtor. These amounts are stated for each debtor on Attachment 20. | | |

[SEAL]

Date: 1/30/2026          Clerk, by /s/ J. Eagle        , Deputy

NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Optional Form
Code Civ. Proc., §§ 699.520, 712.010, 715.010
Gov. Code, § 6103.5

[ ]CEB Essential
ceb.com [ ]Forms

Writ of Execution        EJ-130, Page 1 of 3

25-7153590

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

| Plaintiff/Petitioner: 1910 N Main St Apt Capital LLC | CASE NUMBER | EJ-130 |
|---|---|---|
| Defendant/Respondent: Thomas Goddard | MS25-0977 | |

21. ☐ Additional judgment debtor(s) (name, type of legal entity if not a natural person, and last known address):

22. The judgment is for (check one):
   a. ☐ wages owed.
   b. ☐ child support or spousal support.
   c. ☐ personal debt, as defined in Code of Civil Procedure section 683.110(d). (If this box is checked, the judgment creditor must complete Declaration of Address Verification (form WG-015/EJ-135) before asking the sheriff to serve this form on the judgment debtor.)
   d. ☒ other (describe): Possession of real property (unlawful detainer)

23. ☐ Notice of sale has been requested by (name and address):

24. ☐ Joint debtor was declared bound by the judgment (Code Civ. Proc., §§ 989–994)
   a. on (date):                                          c. on (date):
   b. name, type of legal entity if not a natural person, and     d. name, type of legal entity if not a natural person, and
      last known address of joint debtor:                         last known address of joint debtor:

   e. ☐ Additional costs against certain joint debtors are itemized:  ☐ below  ☐ on Attachment 24e.

25. ☒ (Writ of Possession or Writ of Sale) Judgment was entered for the following:
   a. ☒ Possession of real property: The complaint was filed on (date): 11/17/2025
      (Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)
      (1) ☒ The Prejudgment Claim of Right to Possession (form CP10.5) was served in compliance with Code of Civil Procedure section 415.46. The judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.
      (2) ☐ The Prejudgment Claim of Right to Possession was NOT served in compliance with Code of Civil Procedure section 415.46.
      (3) ☐ The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the judgment may file a Claim of Right to Possession at any time up to and including the time the levying officer returns to effect eviction, regardless of whether a Prejudgment Claim of Right to Possession was served.) (See Code Civ. Proc., §§ 415.46 & 1174.3(a)(2).)
      (4) If the unlawful detainer resulted from a foreclosure (item 26a(3)), or if the Prejudgment Claim of Right to Possession was not served in compliance with Code of Civil Procedure section 415.46 (item 25a(2)), answer the following:
         (a) The daily rental value on the date the complaint was filed was $  93.69
         (b) The court will hear objections to enforcement of the judgment under Code of Civil Procedure section 1174.3 on the following dates (specify):

---

1

2

3

4

EJ-130

5

| Plaintiff/Petitioner: 1910 N Main St Apt Capital LLC | CASE NUMBER: |
| Defendant/Respondent. Thomas Goddard | MS25-0977 |

25. b. ☐ Possession of personal property.
    ☐ If delivery cannot be had, then for the value (itemize in 25e) specified in the judgment or supplemental order.

6

  c. ☐ Sale of personal property.

7

  d. ☐ Sale of real property.
  e. The property is described ☒ below ☐ on Attachment 25e.
  1910 North Main Street, #627

8

  Walnut Creek , CA 94596

9

### NOTICE TO PERSON SERVED

10

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying Notice of Levy (form EJ-150).

11

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

12

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the

13

occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with Code of Civil Procedure section 1174 unless you or the owner of the

14

property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

15

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you

16

may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form Claim of Right to Possession and Notice of Hearing (form CP10) accompanies this writ. You may claim your right to remain on the property by filing it out and giving it to the sheriff or levying

17

officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you

18

were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form Claim of Right to Possession and Notice of Hearing (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right

19

whether or not the property you are renting was sold in a foreclosure.

JUDGMENTS FOR PERSONAL DEBT. If you are the judgment debtor identified in item 4 on this form, and if item 22 on this form says

20

the judgment is for personal debt, the judgment creditor is required to verify your address before asking the levying officer to serve this Writ of Execution. The judgment creditor must give the levying officer a completed copy of Declaration of Address Verification (form WG-015/EJ-135) and must file completed form WG-015/EJ-135 with the court within 10 business days of giving a copy of the form to

21

the levying officer. If the judgment creditor doesn't take these steps, you can ask the court to stay any wage garnishment order, bank account levy, or other levy related to this Writ of Execution. You can use Application for Stay of Levy or Garnishment (form WG-017/ EJ-137) to ask the court to stay the levy or garnishment until the address verification has been completed.

22

23

24

Rev. January 1, 2026

**Writ of Execution**

EJ-130, Page 3 of 3

25

■CEB® Essential
ceb.com ☐Forms

25-7153590

26

27

28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

Contra Costa County Bar Association
(referrals to lawyers for hire for landlords or tenants)
www.cccba.org
Telephone............................................925.825.5700
Hours .........................M-F 9:00am — 4:00pm

**STEP 2: Access Financial Help!**
If a tenant is behind or struggling to pay rent, there is rental assistance that could help. If the tenant's situation is related to COVID 19, the landlord may be able to get 100% of the rent paid by the state!

California Dept. of Housing and Community Development
(statewide, for both landlords and tenants)
www.housing.ca.gov
Telephone........................................833.430.2122

Able Community Foundation
(West Contra Costa)
ablecommunitydf@gmail.com
Telephone.........................................510.274.0958

The Latina Center
(Se habla español, West Contra Costa)
www.thelatinacenter.org
Telephone.........................................510.233.8595

AAPI Coalition
(Countywide)
Telephone ....... 510.630.6852 or 510.260.0602

Monument Impact
(Central / East County)
www.monumentimpact.org/en/home
Telephone........................................925.954.4488

LISC Partner Network Hotline
(Countywide, can connect callers to many organizations helping with applications)
Telephone........................................833.687.0967

**STEP 3: Mediation by Phone or Zoom**
If you are unable to agree to apply for rental money from the State, you will be scheduled for mediation by phone or Zoom. A neutral party works with the tenant and landlord in the short time before the trial, to help both sides reach their own agreement and avoid having to go to court. There is no charge. To schedule this yourself, use the contact information below.

Access To Justice — Court Mediation Programs
Free mediation in all cases
renthelpmediation@gmail.com
Telephone...........................................925.307.9520
**Please Note: If you need an interpreter or sign language, you can request one here: https://www.cc-courts.org/general/interpreter.aspx**

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CONTRA COSTA COUNTY TENANT & LANDLORD RESOURCES

## EVICTIONS, RENTAL ASSISTANCE & MEDIATION

### For Tenants

You don't have to move out just because you have received eviction paperwork, but you have to take steps to protect yourself. Once you receive the "Complaint," you have 5 business days to file an "Answer" or else you can lose. Even if you miss the deadline or aren't sure what it is, you should still try to file an Answer as soon as possible. You can get an Answer form at the Courthouse or on the Court website: http://www.cc-courts.org/ud/ud.aspx

### For Landlords

If your tenant did not pay rent during Covid, you may be required to apply for rent money from the State before filing an eviction case. You may be able to get 100% of the unpaid rent this way. You might even be able to get rent paid for future months.

........................................

### STEP 1: Learn About Your Rights and Find Help

You may be able to get Free Legal Services to help you understand your rights and protections under the law. Please reach out for help right away. (Call to see if you qualify.)

The groups below are here to help: contact them right away.

### Eviction Defense Center

(Richmond and West Contra Costa)
www.evictiondefensecenteroakland.org
Telephone ......................... 510.452.4541
Hours.........................M, T, Th:  9:00am-12:00pm
........................................ & 2:00pm-5:00pm
........................................W , F:  9:00am - 12:00pm
........................................ & 2:00pm - 4:00pm

### Centro Legal de la Raza

www.centrolegal.org
cctr@centrolegal.org
Telephone.............. ........................510.437.1554
Hours...........contact by email or leave voicemail

### Bay Area Legal Aid

www.baylegal.org
Telephone...................................800.551.5554
Hours .......................M and Th – 9:30am -3:00pm
........................................T and W– 9:30am – 1:00pm

### Contra Costa Senior Legal Services

(for individuals aged 60 and over)
www.ccsls.org
Telephone....................................925.609.7900
Hours...................M-F 9:00am – 12:00pm
........................................ & 1:00am – 4:00pm

### ECHO Housing

(counseling services for landlords and tenants)
www.echofairhousing.org
Telephone ........ ............................ 510.581.9380

### Contra Costa Superior Court Self-Help Center

www.courts.ca.gov/selfhelp-eviction.htm
selfhelpcivil@contracosta.courts.ca.gov
Telephone.................................925.608.2128
Hours .............................voicemail and email only

### Tenants Together

(general information about tenants rights)
www.tenantstogether.org
Telephone...................................1.833.430.2122
Hours .........................M-F 7:00am – 7:00pm

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONTRA COSTA COU**
**& LANDLORD R**

EVICTIONS, RENTAL ASSISTA

### For Tenants

You don't have to move out just because you have received eviction paperwork, but you have to take steps to protect yourself. Once you receive the "Complaint," you have 5 business days to file an "Answer" or else you can lose. Even if you miss the deadline or aren't sure what it is, you should still try to file an Answer as soon as possible. You can get an Answer form at the Courthouse or on the Court website: http://www.cc-courts.org/ud/ud.aspx

### For Landlords

If your tenant did not pay rent during Covid, you may be required to apply for rent money from the State before filing an eviction case. You may be able to get 100% of the unpaid rent this way. You might even be able to get rent paid for future months.

..........................................

**STEP 1: Learn About Your Rights and Find Help**

You may be able to get Free Legal Services to help you understand your rights and protections under the law. Please reach out for help right away. (Call to see if you qualify.)

The groups below are here to help; contact them right away.

### Eviction Defense Center

(Richmond and West Contra Costa)
www.evictiondefensecenteroakland.org
Telephone .................................. 510.452.4541
Hours ............. ..........M, T, Th: 9:00am-12:00pm
& 2:00pm-5:00pm
..................................W, F: 9:00am - 12:00pm
& 2:00pm - 4:00pm

Cer
www
cctro
Telep
Hou

Ba
www
Telep
Hou
.......

Cor
Ser
(for i
www
Telep
Hou

E C
(cour
www
Telep

Cor
Cor
www
selfh
Telephone................................. 925.608.2128
Hours ......................voicemail and email only

### Tenants Together

(general information about tenants rights)
www.tenantstogether.org
Telephone.................................1.833.430.2122
Hours ...................M-F 7:00am — 7:00pm



**CONTRA COSTA COUNTY**

**OFFICE OF THE SHERIFF**

**DAVID O. LIVINGSTON**

**SHERIFF-CORONER**

Civil Unit-Evictions
1020 Escobar Street, 2nd Floor,
Suite 2A
Martinez, CA 94553
Phone: 925-655-4555
E-Mail: cococivil@so.cccounty.us

Revised May 2024

Thomas J. Goddard
Pro Per
Neutrinos Platforms, Inc.